it deems just.[24] Because there is no issue of fact and the City is entitled to judgment as a matter of law, we determine the controversy accordingly.

## CONCLUSION

We conclude that the improvement unit mandating the paving of one block of Donna Street, which intersected Jean Drive, was plainly authorized by the second sentence of § 18-2001. We reverse the judgment of the district court and remand the cause with direction to enter judgment in favor of the City.

Reversed and remanded with direction.

---

[24] *U.S. Bank Nat. Assn. v. Peterson*, 284 Neb. 820, 823 N.W.2d 460 (2012).

---

Jeff Hall, appellee and cross-appellee, v. County of Lancaster, appellant and cross-appellee, and Norris School District No. 160, appellee and cross-appellant.

___ N.W.2d ___

Filed April 18, 2014.    No. S-13-724.

1. **Tort Claims Act.** Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the State Tort Claims Act is a question of law.
2. **Political Subdivisions Tort Claims Act: Tort Claims Act.** The Political Subdivisions Tort Claims Act includes a discretionary function exception similar to that contained in the State Tort Claims Act, and thus, cases construing the State Tort Claims Act exception are equally applicable to the discretionary function exception in the Political Subdivisions Tort Claims Act.
3. **Political Subdivisions Tort Claims Act**: **Appeal and Error.** An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the Political Subdivisions Tort Claims Act independent from the conclusion reached by the trial court.
4. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** The Political Subdivisions Tort Claims Act provides limited waivers of sovereign immunity which are subject to statutory exceptions.
5. **Pretrial Procedure: Parties.** A pretrial order is binding upon the parties.
6. **Pretrial Procedure: Pleadings.** The issues set out in a pretrial order supplant those raised in the pleadings.

7. **Immunity: Waiver.** Sovereign immunity is an affirmative defense that can be waived.

8. **Political Subdivisions Tort Claims Act: Appeal and Error.** In actions brought under the Political Subdivisions Tort Claims Act, an appellate court will not disturb the factual findings of the trial court unless they are clearly wrong.

9. **Judgments: Appeal and Error.** When determining the sufficiency of the evidence to sustain the trial court's judgment, it must be considered in the light most favorable to the successful party; every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can be deduced from the evidence.

10. **Negligence: Proof.** In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

11. **Trial: Negligence: Proximate Cause.** Determination of causation is ordinarily a matter for the trier of fact.

12. **Proximate Cause: Words and Phrases.** A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred.

13. **Negligence: Proximate Cause: Proof.** To establish proximate cause, the plaintiff must meet three basic requirements: (1) Without the negligent action, the injury would not have occurred, commonly known as the "but for" rule; (2) the injury was a natural and probable result of the negligence; and (3) there was no efficient intervening cause.

14. **Trial: Judgments: Evidence: Appeal and Error.** Where neither party requests that the trial court make specific findings of fact and conclusions of law, if there is a conflict in the evidence, the appellate court in reviewing the judgment rendered will presume that the controverted facts were decided in favor of the successful party, and the findings will not be disturbed unless clearly wrong.

15. **Judgments.** In the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party.

16. **Trial: Negligence: Damages: Appeal and Error.** Because the purpose of comparative negligence is to allow triers of fact to compare relative negligence and to apportion damages on that basis, the determination of apportionment is solely a matter for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by credible evidence and bears a reasonable relationship to the respective elements of negligence proved at trial.

17. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Joe Kelly, Lancaster County Attorney, and Richard C. Grabow for appellant.

Jeanelle R. Lust, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellee Norris School District No. 160.

Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and Vincent M. Powers, of Vincent M. Powers & Associates, for appellee Jeff Hall.

HEAVICAN, C.J., CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ., and BISHOP, Judge.

CASSEL, J.

## I. INTRODUCTION

A pickup truck and a schoolbus collided at a rural "blind intersection," where a stop sign facing the truck was missing. The district court determined that both drivers were negligent. But the court also found that the county was liable, reasoning that it would have discovered the sign was missing if it had conducted regular sign inspections. Because there was no evidence to support that premise, the court was clearly wrong in determining that the county's lack of a sign-inspection policy was a proximate cause of the accident. We reverse the judgment finding the county liable and remand the cause for a reallocation of liability between the driver of the pickup truck and the school district based upon the existing record.

## II. BACKGROUND

### 1. FACTUAL BACKGROUND

On August 24, 2009, a pickup truck operated by Jeff Hall collided with a bus owned by Norris School District No. 160 (Norris) and operated by Ronny Aden. The collision occurred at the intersection of South 25th Street and Gage Road in Lancaster County, Nebraska. South 25th Street and Gage Road are gravel country roads with a speed limit of 50 miles per hour. Neither vehicle was exceeding the speed limit. Hall was proceeding south on South 25th Street, while the bus was eastbound on Gage Road. The bus was on Hall's right. A diagram from an exhibit in evidence illustrates the intersection and the direction of travel of each vehicle.



The intersection had limited visibility and was "blind" for both drivers. Corn planted near the road obstructed Hall's view to the right and Aden's view to the left. The stop sign for southbound traffic on South 25th Street was missing at the time of the collision. There was no evidence that the County of Lancaster (County) had actual notice of the missing stop sign prior to the accident. Aden, who had driven the same bus route hundreds of times since 2007, had seen a vehicle at the intersection only once or twice a year. He did not believe there was a stop sign at the intersection, but, rather, believed it to be an "open intersection." Hall had not previously traveled on South 25th Street, and he assumed there would be a stop sign for east and west traffic, because he did not have one.

Hall testified that his rate of speed as he approached the intersection was between 45 and 50 miles per hour and that he slowed as he got closer to the intersection because he always slowed as he approached an intersection on a "county road." He estimated his speed to be 40 miles per hour as he entered the intersection. Aden accelerated as he approached the intersection, but the bus did not increase in speed, because it was traveling up an incline. Aden told an investigating officer that

he was driving 47 to 48 miles per hour. Aden testified that a safe speed for the bus going into the blind intersection would have been 20 to 25 miles per hour.

Ted Sokol, Ph.D., an engineer performing accident reconstruction, concluded that there was not enough time for either driver to react once the vehicles became visible to one another. According to Sokol, Hall entered the intersection first, but the vehicles entered at approximately the same time. Sokol opined that Aden should have been more cautious as he approached or entered the intersection and that Aden could have avoided the accident by not assuming traffic on South 25th Street was going to stop and by approaching at a much lower speed so that he could have stopped before entering the intersection. According to Sokol, the bus' maximum speed would have needed to be about 23 miles per hour in order for Aden to perceive and react in time to stop before getting to the west edge of South 25th Street. Sokol testified that Hall could have stopped without entering the intersection if Hall had slowed to 18 miles per hour.

Benjamin Railsback, a mechanical engineer, concluded that the speed of the vehicles was not a contributing factor in the accident. He testified that due to the sight obstruction created by the corn, neither vehicle was visible to the other at a point in time where either driver had the opportunity to perceive and react in order to avoid the accident. He testified that the vehicles would have entered the intersection within a fraction of a second of one another. Railsback did not have any criticism of Aden's driving, because Aden "acted reasonably and drove reasonably through the intersection."

Hall suffered substantial injuries as a result of the accident. Aden and the children who were being transported in the bus also suffered personal injuries. Additionally, Norris incurred property damage.

## 2. Procedural Background

Hall sued the County and Norris, alleging that the collision was proximately caused by the negligence of the County and of Aden. Hall alleged that Aden was negligent in failing to yield the right-of-way, operating the schoolbus too fast for

the conditions, failing to keep proper control of the bus, and failing to keep a proper lookout. He alleged that the County was negligent in failing to have a traffic control device in place, failing to maintain the stop sign that had been in place, and "failing to take effective practices to ensure that a traffic control device would be in place." Hall further alleged that the County failed to have in place any type of policy or practice to inspect or determine if a stop sign had been removed from an intersection.

The County's responsive pleading alleged that it was immune from suit. The County alleged that Hall was negligent in several respects and that he was negligent in such a degree as to bar recovery or to proportionately diminish the amount sought as damages. The County further alleged that the negligence of Hall and Aden were efficient intervening causes.

Norris filed an answer, counterclaim, and cross-claim. Norris alleged that Hall was contributorily negligent in a degree equal to or greater than the total negligence alleged against Norris and the County. Norris claimed that Hall was negligent by failing to yield the right-of-way to Norris' school-bus, failing to have his vehicle under proper and reasonable control, operating his vehicle at a speed greater than was reasonable under the conditions, and failing to keep a proper lookout. Norris asserted a counterclaim against Hall, alleging that he proximately caused damage and injuries to Norris by virtue of his negligent acts and omissions. Norris' cross-claim against the County alleged that the County was negligent for failing to discover through reasonable inspection that the stop sign was missing at the intersection and that such negligence was a proximate cause of injuries to Aden, injuries to the children on the bus, and property damage incurred by Norris. Norris sought judgment against both Hall and the County in the amount of $157,847.83.

In the County's amended answer to Norris' cross-claim, the County alleged that it was immune from suit. The County further alleged that it did not have actual or constructive notice of the malfunction, destruction, or removal of the stop sign. The joint pretrial conference order did not expressly identify immunity from suit as a legal issue presented by the case.

### 3. District Court's Decision

Following a bench trial, the district court entered judgment in Hall's favor. The court stated that "regardless which driver had the right[-]of[-]way, both drivers were negligent for approaching the intersection at a rate of speed that was too fast for the circumstances." The court found that Aden's negligence was greater than that of Hall. As to Norris' claims, the court found that Aden's negligence was 50 percent and denied Norris' claims for recovery.

The district court also found the County to be negligent. The court determined that the County would have discovered the stop sign was missing had it carried out a reasonable inspection and that the absence of a regular inspection, particularly during the high-risk time of year when crops are mature in late summer and early fall, was not reasonable. The court concluded that Aden's and Hall's conduct was foreseeable. Ultimately, the court found the County liable, stating that "[h]ad the stop sign been in placed [sic] it would have been clearly visible to Hall so that he could have stopped at the intersection and avoided the collision."

The court explicitly determined that the negligence of Norris was 50 percent and that Hall's percentage of negligence was 30 percent. The court also stated that the combined negligence of Norris and the County was 70 percent. Thus, as the County and Hall acknowledge, the court implicitly allocated the County's negligence as 20 percent. The court entered judgment against Norris and the County, jointly and severally, in the amount of $770,000. Additional findings of the district court will be included in the analysis.

The County timely appealed, and Norris filed a cross-appeal. We moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## III. ASSIGNMENTS OF ERROR

The County assigns that the district court erred in failing to determine that the County maintained its sovereign immunity

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

for discretionary policy decisions made in relation to sign inspections and related documentation.

The County and Norris each assign error regarding the district court's ultimate determinations of negligence. The County contends that the court erred in determining that the County's sign-inspection policies and documentation were so inadequate as to give the County constructive notice of a missing stop sign, in determining that the County's failure to adopt an adequate sign policy was a proximate cause of Hall's damages, and in failing to determine that the acts of Hall and Aden were efficient intervening causes for the claims of Norris and Hall against the County so that any negligence against the County could not be considered the proximate cause of Hall's or Norris' damages. Norris assigns that the court erred in not determining that Hall was more than 50 percent at fault as a result of the court's failure to make findings on violations of the Nebraska Rules of the Road.[2]

Norris also assigns that the district court erred in failing to allocate Hall's damages into economic and noneconomic damages and failing to allocate percentages of fault to Norris and the County on Hall's claims.

## IV. ANALYSIS

### 1. SOVEREIGN IMMUNITY

#### (a) Issue

The County argues that it maintained sovereign immunity for decisions made regarding the adoption and implementation of a sign-inspection policy. But Hall counters that the discretionary function exception was not an issue at trial.

#### (b) Standard of Review

[1-3] Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the State Tort Claims Act is a question of law.[3] The Political Subdivisions

---

[2] See Neb. Rev. Stat. §§ 60-601 to 60-6,381 (Reissue 2010, Cum. Supp. 2012 & Supp. 2013).

[3] See *Fickle v. State*, 273 Neb. 990, 735 N.W.2d 754 (2007), *modified on other grounds* 274 Neb. 267, 759 N.W.2d 113.

Tort Claims Act includes a discretionary function exception similar to that contained in the State Tort Claims Act, and thus, cases construing the State Tort Claims Act exception are equally applicable to the discretionary function exception in the Political Subdivisions Tort Claims Act.[4] An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the Political Subdivisions Tort Claims Act independent from the conclusion reached by the trial court.[5]

(c) Additional District
Court Findings

The district court did not specifically reference Neb. Rev. Stat. § 13-910 (Reissue 2007) or make any findings regarding sovereign immunity or the discretionary function exception.

(d) Discussion

[4] The Political Subdivisions Tort Claims Act provides limited waivers of sovereign immunity which are subject to statutory exceptions.[6] If a statutory exception applies, the claim is barred by sovereign immunity.[7] The County argues that the district court erred in implicitly determining that § 13-910(2) did not apply to Hall's theory that the County had constructive notice of the missing stop sign by virtue of not adopting an adequate sign-inspection policy. The County relies on the statute stating that the Political Subdivisions Tort Claims Act shall not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused."[8]

---

[4] See *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

[5] See *Fickle*, *supra* note 3.

[6] *Shipley, supra* note 4.

[7] *Id*.

[8] § 13-910(2).

The County's responsive pleadings claimed immunity. The County asserted that it was entitled to immunity because Hall's and Norris' claims were based on the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or an employee of the political subdivision.[9] The County further alleged that it was immune from suit, because the claim alleged by Norris arose out of the malfunction, destruction, or unauthorized removal of any traffic or road sign, signal, or warning device, and that the County did not have actual or constructive notice of such malfunction, destruction, or removal.[10]

Hall claims that the County waived the issue of immunity. He points out that the joint pretrial conference order listed only three legal issues for trial: Norris' negligence, the County's negligence, and Hall's negligence. Indeed, the pretrial order did not identify sovereign immunity or the discretionary function exception as an issue for trial. The district court did not explicitly address immunity in its judgment. But the pretrial order framed the claim against the County as including the "fail[ure] to discover through reasonable inspection that the stop sign was missing at the intersection where the collision occurred." This framed the issue in light of the provision of § 13-910(9) regarding actual or constructive notice of a missing sign.

[5,6] The pretrial order is binding upon the parties.[11] And the issues set out in a pretrial order supplant those raised in the pleadings.[12] The joint pretrial conference order in this case did not identify immunity as an issue, and it specifically ordered that "trial of this case will be governed by the terms of this pretrial conference order and the terms hereof supersede all prior pleadings in this case." This court has affirmed the limiting of the issues at trial to those specified in the pretrial

---

[9] See *id*.

[10] See § 13-910(9).

[11] *Olson v. England*, 206 Neb. 256, 292 N.W.2d 48 (1980).

[12] *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996).

order and limiting the admission of evidence to the issues thus established on numerous occasions.[13]

[7] Further, sovereign immunity is an affirmative defense that can be waived. The exceptions set forth in § 13-910 are affirmative sovereign immunity defenses to claims brought pursuant to the Political Subdivisions Tort Claims Act.[14] We have interpreted exceptions to the State's waiver of immunity under both the State Tort Claims Act and the Political Subdivisions Tort Claims Act as affirmative defenses that the State must plead and prove.[15] In *Reimers-Hild v. State*,[16] the defendants did not raise sovereign immunity as an affirmative defense in their answer and the court's pretrial order specified that the sole issue at trial was whether the plaintiff's claim was timely filed. On appeal, the defendants argued that the action against the State was barred by sovereign immunity. We recognized that sovereign immunity implicated a jurisdictional issue that may be raised at any time by any party, but we declined to consider it because it was not raised in the trial court. We noted that the record was created by stipulation, that the parties apparently did not contemplate the sovereign immunity issue at that time, and that we did not know what arguments might have been made or evidence adduced had the State raised a sovereign immunity defense in the district court.

### (e) Resolution

By failing to identify sovereign immunity as an issue for trial in the joint pretrial conference order, we conclude that the County waived its claim that it was entitled to immunity under the discretionary function exception contained in § 13-910(2).

---

[13] See *Cockrell v. Garton*, 244 Neb. 359, 507 N.W.2d 38 (1993) (collecting cases).

[14] *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007).

[15] *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

[16] *Reimers-Hild v. State*, 274 Neb. 438, 741 N.W.2d 155 (2007).

## 2. NEGLIGENCE OF COUNTY

### (a) Issue

The County argues that the district court erred in determining that it was liable because it did not have an adequate sign-inspection policy. Evidence established that the County did not have a written policy or a set schedule for conducting sign inspections. The court determined that the County's sign-inspection procedures were so inadequate as to give the County constructive notice of the missing sign. The County argues that the court erred in determining that the County's sign-inspection procedures were a proximate cause of Hall's damages.

### (b) Standard of Review

[8,9] In actions brought under the Political Subdivisions Tort Claims Act, an appellate court will not disturb the factual findings of the trial court unless they are clearly wrong.[17] When determining the sufficiency of the evidence to sustain the trial court's judgment, it must be considered in the light most favorable to the successful party; every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can be deduced from the evidence.[18]

### (c) Additional Evidence
### at Trial

The Lancaster County engineering department maintained over 800 miles of arterial roads in the county. Employees of the engineering department were trained to look for damaged or "down" signs while performing their work duties. As one employee testified, "[P]atrol operators . . . out running the roads . . . are [the County's] first line of defense." The sheriff's office also notified the County of signs that were missing. If a stop sign was missing, the County tried to replace it as soon as possible.

Troy Foster, a laborer for the Lancaster County engineering department, mows ditches along the county roads. Foster

---

[17] *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013).

[18] *Ginapp v. City of Bellevue*, 282 Neb. 1027, 809 N.W.2d 487 (2012).

makes it to each "spot" in his area about twice a year, and he mows each area once a year. Foster testified that when he first began mowing, the district supervisor for the southeast area of Lancaster County told him to look for damaged or "down" signs while performing his job and to call the supervisor if such a sign was found. Foster testified that during times of inclement weather or when he was not otherwise mowing, his duty would be "to go around and look for signs that are down, leaning, any kind of repairs that need to be done." He testified that signs are inspected "during our daily business or, you know, as we are going from place to place, we check signs then." There was no pattern that he would follow, and he would not know if a fellow employee had gone to the same place. Foster did not make any record of where he had been to look for signs. Foster testified that he was not given a map or chart showing the location of signs within the county, but he also testified that at one time, employees were given maps showing "by the sections" where signs should be.

Employees of the Lancaster County engineering department testified regarding their most recent work at the intersection prior to the August 24, 2009, accident. Foster had last mowed near the intersection on June 24, and he testified that the stop sign was present at that time. Rick DeBoer, who performs general road maintenance for the County in the spring and summer months, graded South 25th Street to Gage Road and beyond on August 17. He testified that he automatically checks for signs while grading, that he would have done so on that day, and that he did not remember the stop sign being down. If it had been down, DeBoer would have immediately called it in or fixed it.

An employee with the Lancaster County engineering department maintains a computer database of all the signs owned by Lancaster County which includes when the signs have been replaced. The database also tracks why a sign is replaced, including, for example, routine maintenance, installation of a new sign, or the sign was stolen or vandalized. Each sign is replaced every 10 years. Every year, an employee runs a query through the database which results in a list of signs to be replaced that year.

### (d) Additional District
### Court Findings

The district court found the County to be negligent. The court stated that the County did not take reasonable steps to ensure that the stop sign was in place and that a collision at the intersection was foreseeable in the absence of a stop sign. The court observed that there was no policy in place for routine or more frequent inspections during the months that the intersection was rendered "blind" by mature corn. The court noted that no records of traffic control device inspections were kept by employees who routinely worked in the area, even though employees kept records of what areas were mowed and what roads were maintained, and that there was no record of the route taken or observations made during inclement-weather inspections.

The district court found that the County would have discovered the stop sign was missing had it carried out a reasonable inspection and that the absence of a regular inspection, particularly during the high-risk time of year, was not reasonable. The court further found that "the inspections which were conducted were not designed to assure a reasonable inspection of the traffic control devices of the county. They were only conducted haphazardly, in inclement weather, without a map of where devices were located and without a search pattern that assured complete inspection."

The district court considered the foreseeable nature of Aden's and Hall's conduct. The court stated that it was foreseeable that drivers on Gage Road and South 25th Street would not slow to the extremely slow speeds necessary to avoid a collision and that it was foreseeable that the risk of collision rises significantly at the time of the year the collision occurred. The court found the County liable, stating that Hall could have stopped at the intersection and avoided the collision if the stop sign had been in place.

### (e) Discussion

The district court correctly recognized that the claim against the County based upon the missing stop sign was premised

upon the County's failure to discover the absence of the sign "within a reasonable time after actual or constructive notice"[19] to the County. The court also correctly recognized that there was no evidence of actual notice to the County. But the court reasoned that constructive notice could be found in the absence of a sign-inspection policy. We disagree.

[10] In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.[20] For purposes of this opinion, we will assume, without deciding, that the County breached a duty by failing to have a sign-inspection policy. Once the County elected to erect a stop sign, it was required to maintain it in conformance with the Manual on Uniform Traffic Control Devices (Manual).[21] With regard to maintenance of traffic signs, the Manual provides in part:

> To assure adequate maintenance, a schedule for inspecting (both day and night), cleaning, and replacing signs should be established. Employees of highway, law enforcement, and other public agencies whose duties require that they travel on the roadways should be encouraged to report any damaged, deteriorated, or obscured signs at the first opportunity.

The above provision is labeled as a "[g]uidance," which the Manual defines as "a statement of recommended, but not mandatory, practice in typical situations, with deviations allowed if engineering judgment or engineering study indicates the deviation to be appropriate." Notably, the Manual does not prescribe a frequency for the inspection of signs.

[11-13] Determination of causation is ordinarily a matter for the trier of fact.[22] By finding the County liable, the district court determined that it was a proximate cause of the damages. A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result

---

[19] See § 13-910(9).

[20] *Blaser, supra* note 17.

[21] See § 60-6,121.

[22] *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001).

would not have occurred.[23] To establish proximate cause, the plaintiff must meet three basic requirements: (1) Without the negligent action, the injury would not have occurred, commonly known as the "but for" rule; (2) the injury was a natural and probable result of the negligence; and (3) there was no efficient intervening cause.[24]

In actions brought pursuant to the Political Subdivisions Tort Claims Act, this court has, on occasion, reversed the judgment of the district court with respect to causation despite the generally deferential standard of review. In *Brandon v. County of Richardson*,[25] the trial court found the victim to be contributorily negligent, but we reversed that finding and stated that the record failed to show that the victim's conduct was a proximate cause. We reasoned, in part, that "[t]he record does not show that had [the victim] kept law enforcement accurately informed of her whereabouts or returned for the second interview . . . the result would have been different."[26] And in *Koncaba v. Scotts Bluff County*,[27] we reversed a trial court's judgment in the plaintiff's favor after determining that the record established, as a matter of law, that the plaintiff's decedent was contributorily negligent and that such negligence was a proximate cause of the accident.

On this record, no reasonable fact finder could conclude that the County's failure to have a sign-inspection policy was a proximate cause of the accident. Hall and Norris had the burden to show that if the County had established a proper procedure for inspecting its signs, it would have discovered the missing stop sign and replaced it before the accident occurred. But there is no evidence to establish how long the stop sign was missing or how frequently sign inspections should be conducted under the circumstances. Thus, Hall and Norris cannot establish that the sign was missing long enough that it would

---

[23] *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

[24] *Radiology Servs. v. Hall*, 279 Neb. 553, 780 N.W.2d 17 (2010).

[25] *Brandon, supra* note 22.

[26] *Id.* at 667-68, 624 N.W.2d at 627.

[27] *Koncaba v. Scotts Bluff County*, 237 Neb. 37, 464 N.W.2d 764 (1991).

have been discovered pursuant to a sign-inspection procedure. And because the Manual does not mandate any frequency of inspection, liability in this case cannot be fairly attributed to the County's lack of a formal policy for sign inspections. As a matter of law, the record fails to show that the County's failure to have a sign-inspection policy was a proximate cause of the accident.

### (f) Resolution

Because there was no evidence to establish that the County's failure to have a sign-inspection policy was a proximate cause of the accident, we reverse the judgment of the district court finding the County liable and apportioning fault to it. We remand the cause to the district court to apportion the County's share of negligence between Hall and Norris.[28]

## 3. Hall's Negligence

### (a) Issue

Norris argues that by failing to determine who had the right-of-way at the intersection, the court failed to give proper consideration as to whether Hall's contributory negligence should bar his recovery as a matter of law.

### (b) Standard of Review

In actions brought under the Political Subdivisions Tort Claims Act, an appellate court will not disturb the factual findings of the trial court unless they are clearly wrong.[29]

[14] Where neither party requests that the trial court make specific findings of fact and conclusions of law, if there is a conflict in the evidence, the appellate court in reviewing the judgment rendered will presume that the controverted facts were decided in favor of the successful party, and the findings will not be disturbed unless clearly wrong.[30]

---

[28] See *Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012).

[29] *Blaser, supra* note 17.

[30] *C. Goodrich, Inc. v. Thies*, 14 Neb. App. 170, 705 N.W.2d 451 (2005).

### (c) Additional District
### Court Findings

The court found that "regardless which driver had the right[-]of[-]way, both drivers were negligent for approaching the intersection at a rate of speed that was too fast for the circumstances." The court further found that Aden's negligence was greater than that of Hall because Aden was familiar with the intersection, knew the intersection was completely blind, and believed traffic from the north was not required to stop, but entered the intersection at the maximum permissible speed.

### (d) Discussion

Norris claims that the district court erred by failing to make a finding regarding whether Hall or Aden had the right-of-way. Norris argues that because the vehicles arrived at the intersection at approximately the same time, Aden had the right-of-way. Hall argues that the statutory right-of-way is only one factor to be used in evaluating a person's conduct and that he complied with the applicable standard of care. He directs us to *Hodgson v. Gladem*,[31] where we stated:

> The statutory right-of-way rule, if it is to be effective, must be accompanied by an observance by both parties of the rules applicable to the exercise of due care and in particular the duty to keep a lookout and make effective observations at a time when such observations can have an effect consonant with [the] underlying purpose of the rules.

[15] The district court was not required to make a specific factual finding regarding the statutory right-of-way. In the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party.[32] Neither Norris nor any other party requested specific findings by the district court. Accordingly, the court was not obligated

---

[31] *Hodgson v. Gladem*, 187 Neb. 736, 741, 193 N.W.2d 779, 782 (1972).

[32] *Lesser v. Eagle Hills Homeowners' Assn.*, 20 Neb. App. 423, 824 N.W.2d 77 (2012). See Neb. Rev. Stat. § 25-1127 (Reissue 2008).

to make a specific determination regarding which driver had the right-of-way.

### (e) Resolution

Because no party requested specific findings of fact by the district court, we presume that any issue regarding the statutory right-of-way rule was decided in Hall's favor. But because we remand for reallocation of the 20 percent of fault initially allocated to the County, we do not know whether the fault allocated to Norris will be equal to or greater than that allocated to Hall.

### 4. ALLOCATION OF DAMAGES AND FAULT

### (a) Issue

Norris argues that the district court erred by failing to allocate damages into economic and noneconomic damages and by failing to allocate percentages of fault between Norris and the County.

### (b) Standard of Review

[16] Because the purpose of comparative negligence is to allow triers of fact to compare relative negligence and to apportion damages on that basis, the determination of apportionment is solely a matter for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by credible evidence and bears a reasonable relationship to the respective elements of negligence proved at trial.[33]

### (c) Additional District Court Findings

The district court awarded Hall $1,100,000 and identified Hall's medical expenses as totaling $357,335.86. The court found the percentage of negligence of Norris and the County to be 70 percent and the percentage of negligence of Hall to be 30 percent. After reducing the total damages by the 30 percent which represented Hall's contributory negligence, the court entered judgment of $770,000 in Hall's favor.

---

[33] *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012).

(d) Discussion

Norris' argument is based on Neb. Rev. Stat. § 25-21,185.10 (Reissue 2008), which concerns the allocation of liability in actions involving more than one defendant. Norris asserts that the statute requires the district court to make specific rulings on economic and noneconomic damages and requires a separate judgment against each defendant for that defendant's percentage of the noneconomic damages based on that defendant's percentage of fault.

Our reversal of the judgment against the County undermines Norris' argument. Because we have determined that the County is not liable for Hall's injuries, the allocation between Norris and the County is no longer an issue.

But there is an issue of allocation remaining, which we cannot resolve in this appeal. The district court allocated 50 percent of the negligence to Norris, 30 percent to Hall, and 20 percent to the County. Because we have determined that the County was not liable for Hall's damages, the 20 percent of negligence allocated to it must be reallocated. But because apportionment is solely a matter for the fact finder and will be upheld except in very limited circumstances, we cannot determine how the district court would have allocated the 20 percent as between Hall and Norris.[34] We must remand the cause in order for the district court to make this allocation in the first instance.

(e) Resolution

Because we have determined that the County is not liable for Hall's damages, the matter of allocation of damages between the County and Norris is no longer an issue. But remand is necessary to apportion the County's share of the negligence as between Hall and Norris. We remand the cause to the district court for a reallocation of liability between Hall and Norris based upon the existing record.

---

[34] See *Downey, supra* note 28.

### 5. REMAINING ASSIGNMENTS OF ERROR

[17] Our resolution of this appeal makes it unnecessary to consider the other assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[35]

## V. CONCLUSION

We conclude that the County waived its claim that it was entitled to immunity under the discretionary function exception, because it failed to identify sovereign immunity as an issue for trial in the pretrial order. We reverse the judgment of the district court finding the County liable, because there is no evidence to establish that the County's failure to have a sign-inspection policy was a proximate cause of the accident. Because the County is not liable, the matter of allocation of damages between it and Norris is no longer an issue. But as to the 20 percent of liability erroneously assessed to the County, we cannot determine how the finder of fact would have allocated such negligence between Hall and Norris. We remand the cause to the district court for a reallocation, between Hall and Norris based upon the existing record, of the 20 percent of liability initially allocated to the County.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT, J., not participating.

---

[35] *Kerford Limestone Co. v. Nebraska Dept. of Rev., ante* p. 653, ___ N.W.2d ___ (2014).