Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/21/2018 09:08 AM CDT

Clayton B. Schroeder, appellee, v.
Maria A. Schroeder, now known as
Maria A. Michaelis, appellant.
___ N.W.2d ___

Filed August 21, 2018.    No. A-17-874.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Judgments: Pleadings: Appeal and Error.** A motion to alter or amend a judgment is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion.

3. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

4. **Contempt: Proof.** Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence.

5. **Child Custody.** While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration.

6. **Judgments.** In the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party.

7. **Trial.** Even where the civil procedure code mandates specific findings, it does so only upon a party's request.

8. **Trial: Time.** Motions for specific findings of fact pursuant to Neb. Rev. Stat. § 25-1127 (Reissue 2016) must be made before the final submission of the case to the court.

9. **Contempt: Words and Phrases.** When a party to an action fails to comply with a court order made for the benefit of the opposing party, such an act is ordinarily a civil contempt, which requires willful disobedience as an essential element. "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order.

10. **Contempt: Presumptions: Proof.** Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence.

11. **Divorce: Attorney Fees: Costs.** Customarily in dissolution cases, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits.

12. **Modification of Decree: Attorney Fees: Appeal and Error.** In an action for modification of a dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.

13. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

14. **Divorce: Modification of Decree: Attorney Fees.** A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution and modification cases.

15. **Attorney Fees.** The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Benjamin E. Maxell, of Govier, Katskee, Suing & Maxell, P.C., L.L.O., for appellant.

Matthew Stuart Higgins, of Higgins Law, for appellee.

Pirtle, Riedmann, and Bishop, Judges.

Pirtle, Judge.

## INTRODUCTION

Maria A. Schroeder, now known as Maria A. Michaelis, appeals the order of modification entered by the district court for Douglas County on June 20, 2017, and the order overruling her motion to alter or amend, filed August 7. The court denied Maria's request to hold her former husband, Clayton B. Schroeder, in contempt of court and granted Clayton's request for legal custody and attorney fees. The court denied Clayton's request to hold Maria in contempt of court. For the reasons that follow, we affirm.

## BACKGROUND

Clayton and Maria were married in June 2002 and divorced in June 2006. Their daughter, Alexis Schroeder (Lexi), was born in May 2004. The original decree of dissolution was entered on June 8, 2006. The parties have returned to the district court for Douglas County numerous times for the purpose of modifying their decree or to allege violations of the decree by the other party.

In the present matter, Clayton filed a complaint to modify and an application for contempt citation on March 15, 2016. He alleged that Maria had scheduled and fostered Lexi's participation in a number of activities without giving Clayton notice or obtaining his consent. He argued that third parties, including coaches and school officials, were not honoring the authority given to him by the district court in an order entered in December 2015. He argued that Maria defied his authority by interacting with third parties on Lexi's behalf without Clayton's consent or knowledge. Clayton requested that he be awarded full legal custody of Lexi and that Maria be held in contempt of court.

Maria filed an application to modify and an application for contempt citation on November 30, 2016. She alleged that Clayton acted unilaterally, in violation of the court's orders. She also alleged that Clayton was in contempt of the provision

regarding telephone calls to the nonpossessory parent. She also requested that she be awarded legal custody of Lexi and attorney fees.

Trial was held on April 25 and 26, 2017, and the court issued a written order on June 20. The court found that both parties had the best interests of their child at heart, but they "cannot agree or get along as to how to best raise their child in lieu of a variety of activities and how to provide each party their respective time with the child that is somewhat uninterrupted by the variety of activities that are scheduled and to which they disagree." The court found that "[b]ecause of the continued and unrelenting problems the parties continued to have," there had been a material change in circumstances. The court observed that the parties could not communicate or cooperate properly to serve Lexi's best interests. Therefore, the court found it was in Lexi's best interests to modify the decree, and Clayton was granted sole legal custody. The order states, "This means that [Clayton] has the sole authority to make the decisions for the minor child."

The court found that Maria was not in contempt of court. The court found that Maria had violated the orders of the court, but her violations were not done "willfully and contumaciously." The court found that attorney fees were appropriate and that Maria was to pay Clayton the sum of $10,000. The court did not rule on Maria's request that Clayton be held in contempt.

Maria filed a motion to alter or amend and for the court to provide more detailed findings. The court acknowledged that there had been no ruling on Maria's request to hold Clayton in contempt. The court found Clayton was not in contempt, and the motion was overruled. Maria's motion to alter or amend was overruled, and she timely appealed.

ASSIGNMENTS OF ERROR

Maria alleges the court erred in (1) awarding sole legal custody to Clayton; (2) overruling her motion to alter or amend, and failing to provide a sufficiently detailed opinion; (3)

finding Clayton was not in contempt of court; and (4) award-ing excessive attorney fees to Clayton.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determina-tion will normally be affirmed absent an abuse of discretion. *Floerchinger v. Floerchinger*, 24 Neb. App. 120, 883 N.W.2d 419 (2016).

[2] A motion to alter or amend a judgment is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[3,4] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determina-tions of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and con-vincing evidence. *Id.*

## ANALYSIS

*Award of Sole Legal Custody to Clayton.*

Maria asserts the court abused its discretion in awarding legal custody of Lexi to Clayton, because Clayton refuses to cooperate or communicate with Maria, he dismisses her requests and opinions unilaterally, and he ignores her. She argues that she is the more cooperative parent and that she takes Lexi's interests and wishes into account.

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de

novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Floerchinger v. Floerchinger, supra*.

In the order overruling Maria's motion to alter or amend, the court found the evidence showed that after the court granted Clayton the final decisionmaking authority, Maria "continued to ignore that Order and do as she generally desired with the minor child." The court found that Clayton was better able to cooperate with Maria and was more reasonable in the action taken as to the activities of Lexi.

The record shows that Clayton and Maria agree that Lexi should participate in a variety of activities, but disagree about the frequency and extent of Lexi's involvement. Maria testified that she signed Lexi up for activities which occurred only on the days Lexi stayed with her and that if there were times when the activity occurred on days Lexi was with Clayton, Lexi just would not go. For example, Maria signed Lexi up for a swim team and Lexi only attended practices and meets which occurred during Maria's parenting time. Maria's testimony demonstrates her belief that it was not necessary to inform Clayton regarding activities Lexi was enrolled in, if Lexi was participating only during Maria's parenting time. Clayton testified that he did not think it was "appropriate" for Lexi to "sign up for multiple events and only attend half." He also testified that there were activities and camps that Maria signed Lexi up for that he did not find out about until after they had taken place.

Maria asserts Clayton made unilateral decisions with regard to Lexi's activities. Clayton testified that he did not make any decisions without first consulting with Maria. He said there were times when she agreed, times when she disagreed, and times that she did not respond in a timely manner to his requests for input.

Maria argues that the decision to switch Lexi's softball teams "[took] Lexi away from the friends and team she knows best." Brief for appellant at 13. She also argued that Clayton

had not taken her input into account in a single decision with regard to Lexi's extracurricular activities. Lexi testified that she enjoyed playing on the softball team and the basketball team that were coached by her stepfather. Clayton testified that he was concerned because the softball team played approximately 40 games during the season and Lexi was involved in other activities as well. Because the parties could not agree, he exercised the decisionmaking authority the court assigned to him and picked another softball team, offering Maria and her husband the opportunity to coach with him. The team he chose was made up of students who attended the same school as Lexi.

Maria also asserts that Clayton refuses to take Lexi's choice of activities into account. The evidence shows that Lexi likes to stay busy and that she enjoys a wide variety of sports and activities, including volleyball, basketball, piano lessons, softball, swimming, and horseback riding. Clayton testified that he takes input from Lexi and from Maria, but recognizes that if Lexi was allowed to choose, she would "say yes to everything" and would "overschedule herself." He stated that he was trying to parent and make decisions based upon Lexi's input, whether the activity will fit into the schedules for both parents' families, and whether the schedule Lexi was keeping was reasonable.

The evidence shows that the joint legal custody arrangement was unworkable. The parties did not agree on many things, and it was causing significant strain on the cooperative parental relationship between the parents and stress for Lexi. Maria does not argue that a transition to sole legal custody was in error; she simply believes that legal custody should have been awarded to her. Upon our review of the evidence, we find the decision of the district court was not an abuse of discretion.

Maria asserts Clayton's "[f]ear" of Lexi's testifying at court is indicative that he does not take Lexi's wishes into account. Brief for appellant at 17. Clayton stated that he did not want

Lexi to leave the courthouse feeling the weight of responsibility for the consequences of the outcome of the trial. Upon our review, it does not appear that Clayton was fearful of the court's hearing the testimony of Lexi, but, rather, he did not want Lexi to feel caught in the middle of her parents. In the end, Lexi was asked to testify in camera. Lexi did not speak negatively about either parent, and she expressed her desire to participate in a number of activities. Her testimony regarding both parents was, for the most part, very positive.

Maria asserts the court erred in awarding legal custody of Lexi to a parent who chose not to enroll Lexi on a volleyball team, despite the fact that volleyball is Lexi's favorite sport and she wants to play volleyball in college. Lexi testified that she enjoys volleyball but that the club team "takes up a lot of time and most of the people that play for that will — that's the only sport they play. And I don't want to do that. I want to play as many sports as possible."

Maria asserts there was independent witness testimony showing that Clayton's decisions have had a detrimental effect on Lexi and that Clayton abuses his power. Clayton sent letters to two athletic organizations in which Lexi participated, indicating that he was Lexi's legal guardian and that he had not given his permission for Lexi to participate. He requested that Lexi be removed from the team rosters. In one letter, Clayton asserted he was Lexi's legal guardian, and in the other, he asserted that he was "granted sole decision making authority." The individuals interpreted this communication to mean that he possessed sole legal custody of Lexi. Maria argues that Clayton expressed he had "sole legal custody" or was granted "'sole decision making authority,'" which statements she alleges were "blatantly false" at the time they were made. Brief for appellant at 20. The emails, which were entered as exhibits, do not show that Clayton asserted that he was Lexi's sole legal guardian, even though that was the inference the individuals drew from his statements. This particular argument is not supported by the record, as neither of the witnesses

testified that Clayton's actions were detrimental to Lexi. The organizations ultimately decided not to honor Clayton's request to remove Lexi from their rosters, and there is no showing that the letters affected Lexi in any way.

Maria argues the district court's "[g]ratuitous [c]omments" indicated that the district court was prejudging the evidence and that the court had reached a decision on the weight to give to Lexi's testimony prior to her testimony. Brief for appellant at 20. The record shows that during the cross-examination of Clayton, wherein Lexi was described as "brilliant" and "gifted," the court interjected and stated the view that children can be "brilliant," yet still not always make great decisions which are supported by common sense. Maria argues that the court had clearly "already made up its mind regarding the weight" to be given to Lexi's testimony and that "it would not give any credence to such testimony." *Id.* at 21.

Lexi was ultimately allowed to testify, and Maria asserts the comments made to Lexi "signified the stance it would take on Lexi's thought process" when the court stated, "'[W]hat you've told me so far, may not have anything to do with my decision. My decision is basically based upon what your parents have told me so far.'" *Id.* at 23. Prior to Lexi's testimony, the court informed the parties that, although he does not like to involve minor children in these matters, sometimes it is necessary. He stated that he does not ask children to answer pointed questions that will make them uncomfortable. Rather, he said:

> I always, depending upon the age, tell them that they shouldn't be concerned as to what they tell me because, you know, I may or may not use any of this stuff in my decision and I probably won't use any of this information in my decision to make it as nonpainful [sic] as possible.

[5] Nonetheless, Nebraska case law is clear that the court should consider "[t]he desires and wishes of the minor child, if of an age of comprehension but regardless of chronological

age, when such desires and wishes are based on sound reasoning." Neb. Rev. Stat. § 43-2923(6)(b) (Reissue 2016). The Nebraska Supreme Court, in applying this provision, has stated that while the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. See *Wild v. Wild*, 15 Neb. App. 717, 737 N.W.2d 882 (2007), citing *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

Upon our review of the court's comments, we find the district court applied the correct standard of law, considered the appropriate factors, and gave the appropriate weight to Lexi's testimony. We find the district court did not abuse its discretion in finding that it was in Lexi's best interests to grant sole legal custody to Clayton.

*Motion to Alter or Amend.*

Maria asserts the court erred in not sustaining her motion to alter or amend and in refusing to include a detailed rationale as to why the court chose to award Clayton sole legal custody of Lexi. She asserts the district court's "precursory" order hinders her ability to properly prosecute her appeal. Brief for appellant at 27.

In the June 20, 2017, order, the court stated:

Since that Decree of Dissolution, the parties have had joint legal and physical custody and have had numerous problems with each other as to the raising of the minor child. There have been numerous filings by each party to have the other party held in contempt of court and each party has filed applications to modify the Decree.

The Decree was modified by this court on December 22, 2015, in which the Court found that the parties should continue to have joint legal and physical custody except that [Clayton] shall have the final decision making authority. That has not proved to be effective as the parties are still having problems and each party has recently

filed Applications to Modify the Decree and Applications to Show Cause why the other party should not be held in Contempt of Court. This Court has found that both parties have the best interest of their child at heart, however, they cannot agree or get along as to how to best raise their child in lieu of a variety of activities and how to provide each party their respective time with the child that is somewhat uninterrupted by the variety of activities that are scheduled and to which they disagree.

The court found that there had been a material change of circumstances due to the "continued and unrelenting problems the parties continue to have." The court found it was in Lexi's best interests to transfer sole legal custody to Clayton. Maria filed a motion to alter or amend on June 27, 2017, requesting that the court provide the rationale to support its ruling.

In its August 7, 2017, order, the court acknowledged Maria's request and stated that Clayton was "better able to cooperate" with Maria and was "more reasonable in the action taken as to the activities of the minor child." Therefore, the court found that it was in the best interests of Lexi that Clayton be granted sole legal custody of her.

[6-8] Maria has made no reference to statutes or case law requiring the district court to include a detailed rationale in its award of custody. In the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party. *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 105 (2017). See Neb. Rev. Stat. § 25-1127 (Reissue 2016). The Nebraska Supreme Court has held that "even where our civil procedure code mandates specific findings, it does so only upon a party's request." *Becher v. Becher*, 299 Neb. 206, 215, 908 N.W.2d 12, 23 (2018). Nebraska case law provides that motions for specific findings of fact pursuant to § 25-1127 must be made "before the final submission of the case to the court." *Stuczynski v.*

*Stuczynski*, 238 Neb. 368, 370, 471 N.W.2d 122, 124 (1991). Maria's request for the court to provide a detailed rationale was not made until after the case was submitted to the court; therefore, the court was not under any obligation to provide specific findings.

Further, any deficiency in the district court's initial order appears to have been remedied by the rationale included in the order following Maria's motion to alter or amend. Having found the district court did not abuse its discretion in awarding Clayton sole legal custody, we find the district court did not abuse its discretion in overruling Maria's motion to alter or amend. We further find that the court did not refuse to "include a detailed rationale" as to why Clayton was awarded sole legal custody. Brief for appellant at 27.

*Clayton Was Not in Contempt.*

Maria argues the district court erred by not finding Clayton in contempt because of his "incessant refusal to allow [her] to speak to Lexi on a daily basis via telephone." Brief for appellant at 24. Specifically, Maria asserts that Clayton should have been held in contempt for failing to allow Lexi to call Maria while Lexi and Clayton were on vacation in Alaska in the summer of 2016. She also argues Clayton was in contempt for failing to keep her apprised of Lexi's whereabouts during that vacation. She alleges that Clayton failed to "have Lexi telephone [her] at any point" during the trip. Brief for appellant at 24.

[9,10] When a party to an action fails to comply with a court order made for the benefit of the opposing party, such an act is ordinarily a civil contempt, which requires willful disobedience as an essential element. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and

convincing evidence. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016).

The order of the court entered on November 9, 2009, states:

Both parties have further agreed that the minor child should have access to telephone contact with the non-possessory parent, and each parent should have the same degree of telephone access with the child. The parent with whom the child is staying at any one time shall assist the child in initiating calls to or receiving calls from the other parent, and shall not unreasonably interfere with such access. Telephone access shall be exercised by the non-possessory parent at reasonable times, and for reasonable durations, to take into account the child's school and extracurricular activity schedule, bedtime, and meals.

The telephone provision has been changed a few times, most recently in the December 2015 order, which states that "the possessory parent or the child shall initiate one phone call to the non-possessory parent each day at the appropriate time that the parties shall agreed [sic] upon."

Clayton testified that he allowed Lexi to make daily telephone calls to Maria during the trip. Email records show that Clayton notified Maria prior to the trip that telephone service would be "as previously decided with all vacations." He noted that Lexi would call at the beginning and near the end of the 10-day trip and that his cell phone would be off during much of the trip because cellular service would be unavailable. At trial, Clayton testified that he allowed Lexi to make a call to Maria from his cell phone every day. Lexi testified that she called Maria "a few times." When asked to clarify, Lexi stated, "I called her whenever I could, but sometimes we got too far away from land or something and then nothing was — nothing could work."

Maria testified that she did not receive any telephone calls from Lexi for 8 days. She sent daily emails to Clayton noting that she had not talked to Lexi and that his voicemail was

full, so she had been unable to leave a message. These emails were entered as exhibits, as was a record of her cell phone call history during that period. Maria testified that Lexi does not call her home telephone number, but Maria did not provide a record of calls to or from her home telephone during that period.

Upon our de novo review of the record, we cannot say that Clayton willfully disobeyed the court order. The evidence shows he was not unwilling to allow Lexi to have daily telephone contact with Maria, and Lexi testified that she was in regular contact with Maria during the trip. Additionally, the record indicates there were circumstances and technological limitations during the vacation that were outside of Clayton's control. Accordingly, the district court did not abuse its discretion when it found Clayton was not in contempt.

To the extent that Maria also argues that Clayton was in contempt because he "waits in the wings to rush Lexi off" of calls, in an attempt to frustrate her, we find the court did not abuse its discretion. Brief for appellant at 25. Maria testified that "for the most part she calls me every night," but she alleged that Clayton listened to the calls or forced Lexi to end her calls prematurely. On cross-examination, Maria testified that she could not recall any other days other than the days during the trip when she did not receive a call from Lexi.

Clayton testified that Lexi makes a telephone call to Maria every day that she is with him. He also said that there have been times when he has heard Maria yelling at Lexi about choosing activities that Maria wants Lexi to participate in. Clayton testified there have been times that Maria was "grilling" Lexi about her test scores and that the pressure caused Lexi to cry. As a result, he said that at times, he stands in the area when Lexi talks to Maria to support her. He said, "I'm standing in the area so that when I see she reacts with tears or fear or wants to hold the phone away that I can say you can blame this on me and you can shut the phone call down now."

Lexi testified that nobody listened to her calls when she spoke to either parent. Lexi testified that when she is at Clayton's house, the family is "always doing something together," and Maria "likes to talk . . . for a long time on the phone," a habit Clayton does not like. At times, Clayton interrupted Lexi's telephone calls to tell her it was time to hang up. Lexi said that she tries not to "cut [Maria] off in the middle of something" and that she has spoken to Clayton about not interrupting her during her calls with Maria. Clayton told Lexi that he would let Lexi "keep track" of her time on the telephone on her own. Upon our de novo review of the record, we cannot say that Clayton's behavior with regard to Lexi's daily telephone contact with Maria amounts to contempt.

*Attorney Fees.*

Maria asserts the district court erred in "arbitrarily" assessing a $10,000 award against her because she was not found to be in contempt of court, she did not file any frivolous pleadings, she was not dilatory in conducting her litigation, and Clayton was the initiating party of the modification proceedings. Brief for appellant at 26. She asserts the award of attorney fees was punitive.

[11,12] Customarily in dissolution cases, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits. *Roberts v. Roberts*, 25 Neb. App. 192, 903 N.W.2d 267 (2017). In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Id.*, citing *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

[13,14] Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza, supra.* A uniform course of procedure exists in Nebraska for the award of attorney fees

in dissolution and modification cases. See, *id.*; *Nimmer v. Nimmer*, 203 Neb. 503, 279 N.W.2d 156 (1979). Thus, there was authority, in this modification of a dissolution decree case, for awarding attorney fees.

[15] The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008).

The original application to modify was filed in 2009, and multiple complaints to modify have been filed prior to the instant case. Clayton sought modification of the decree in this case because the parties had difficulty reaching cooperative agreements regarding Lexi's best interests when they shared legal custody. Clayton testified that he has spent approximately $100,000 throughout the ongoing modification cases, and he requested, and was awarded, $10,000 for fees related to this action. He requested sanctions against Maria in the amount of $5,000, which the court denied.

Maria asserts that "no evidence exists within the record to support a finding as to the specific Ten Thousand Dollar and No Cent ($10,000.00) amount awarded by the District Court." Brief for appellant at 27. This assertion is not supported by the record. Clayton's request was supported by exhibit 26, the affidavit of Clayton's counsel, which was received without objection from Maria's counsel. Exhibit 26 contains an accounting of attorney fees incurred between April 1, 2015, and April 24, 2017, and an estimate of 6 hours of trial time. The total came to just under $10,000. Trial took place over the course of 2 days, April 25 and 26. We note that Maria's attorney submitted an affidavit in support of Maria's motion for attorney fees requesting an amount similar to Clayton's counsel: $6,551.92 for pretrial expenses and approximately $4,000 for anticipated trial expenses and fees.

The court found that Maria had violated the court's order, but that her violation was not willful or contumacious; as such, she was not found to be in contempt. As previously discussed, Clayton was not found to be in contempt of the court's orders and he prevailed in his request for sole legal custody of Lexi. Although Clayton initiated this action, the record shows that he was prompted to file by Maria's continued attempts to circumvent the spirit of the court's previous order, which ordered the parties to have joint legal custody but granted Clayton the "final decision making authority." The order also stated, "With regard to the sporting events, in order for there to be sporting events, the parties have to agree as to that event." Maria was aware of Clayton's activity preferences for Lexi, but Maria signed Lexi up for activities which Lexi would only attend during Maria's parenting time and she did not keep Clayton informed about these extracurricular activities. The standard of review in this case is whether the court abused its discretion, and we conclude that it did not and that the amount of the fee was not unreasonable.

## CONCLUSION

We find the district court did not abuse its discretion in awarding sole legal custody to Clayton, in awarding him attorney fees of $10,000, or in finding that he was not in contempt. The court did not abuse its discretion in overruling Maria's motion to alter or amend.

AFFIRMED.