Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

Johnnie W. Davis, appellant, v.
State of Nebraska et al., appellees.

___ N.W.2d ___

Filed October 6, 2017.    No. S-16-355.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** An appellate court
   reviews a district court's order granting a motion to dismiss de novo,
   accepting all allegations in the complaint as true and drawing all reason-
   able inferences in favor of the nonmoving party.
2. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss
   for failure to state a claim, a plaintiff must allege sufficient facts to state
   a claim to relief that is plausible on its face. In cases in which a plaintiff
   does not or cannot allege specific facts showing a necessary element, the
   factual allegations, taken as true, are nonetheless plausible if they sug-
   gest the existence of the element and raise a reasonable expectation that
   discovery will reveal evidence of the element or claim.
3. **Appeal and Error.** An appellate court independently reviews questions
   of law decided by a lower court.
4. **Constitutional Law.** The determination of constitutional requirements
   presents a question of law.
5. **Statutes.** Statutory interpretation presents a question of law.
6. **Tort Claims Act.** Whether a plaintiff's allegations present a claim that
   is barred by an exception to the State's waiver of tort immunity in a tort
   claims act presents a question of law.
7. **Tort Claims Act: Immunity: Waiver.** Neb. Rev. Stat. § 81-8,209
   (Reissue 2014) bars tort claims against the State, its agencies, and its
   employees unless the State has waived its immunity for the claim.
8. **Statutes.** Statutes relating to the same subject, although enacted at dif-
   ferent times, are in pari materia and should be construed together.
9. **Tort Claims Act: Immunity: Waiver.** Neb. Rev. Stat. § 81-8,215
   (Reissue 2014), when read in pari materia with Neb. Rev. Stat.
   § 81-8,209 (Reissue 2014), operates as a limited waiver of the State's
   tort immunity, subject to specified exceptions that are set out in Neb.
   Rev. Stat. § 81-8,219 (2014).

10. **Tort Claims Act: Public Officers and Employees: Immunity: Waiver.** The exceptions to the waiver of the State's tort immunity include claims based on the exercise or performance of a discretionary function by a state officer or employee.

11. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. Under Neb. Rev. Stat. § 81-8,210 (Reissue 2014), whether a plaintiff has sued a state officer or employee in his or her individual capacity is irrelevant to whether the State Tort Claims Act bars a tort claim against that officer or employee. If an officer or employee was acting within the scope of his or her office or employment and the alleged tortious conduct falls within an exception to the State's waiver of tort immunity, the State Tort Claims Act bars a tort claim against the officer or employee, regardless of the capacity in which he or she was purportedly sued.

12. **Jurisdiction: Appeal and Error.** An appellate court has an independent duty to decide jurisdictional issues on appeal, even if the parties have not raised the issue.

13. \_\_\_\_: \_\_\_\_. When a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, an appellate court also lacks the power to adjudicate the merits of the claim.

14. **Actions: Jurisdiction: Immunity.** A trial court lacks subject matter jurisdiction over an action against the State unless the State has consented to suit.

15. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.

16. **Courts: Appeal and Error.** The doctrine of stare decisis requires that appellate courts adhere to their previous decisions unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.

17. \_\_\_\_: \_\_\_\_. The doctrine of stare decisis is entitled to great weight, but it does not require an appellate court to blindly perpetuate a prior interpretation of the law if it concludes that prior interpretation was clearly incorrect.

18. **Tort Claims Act: Immunity: Waiver: Appeal and Error.** An exception to the State's waiver of immunity under the State Tort Claims Act is an issue that the State may raise for the first time on appeal and that a court may consider sua sponte.

19. **Tort Claims Act: Appeal and Error.** An appellate court has the power to determine whether a plaintiff's allegations, taken as true, show that a tort claim is facially barred by an STCA exception under Neb. Rev. Stat. § 81-8,219 (Reissue 2014).

20. **False Imprisonment: Words and Phrases.** False imprisonment is the unlawful restraint of a person's liberty against his or her will. Any

intentional conduct that results in the placing of a person in a position where he or she cannot exercise his or her will in going where he or she may lawfully go may constitute false imprisonment.

21. **Judgments: Appeal and Error.** An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.

22. **Constitutional Law: Civil Rights: Immunity.** States or governmental entities that are considered arms of the State for 11th Amendment purposes are not "persons" that can be sued under 42 U.S.C. § 1983 (2012).

23. ____: ____: ____. Whether a state entity is an arm of the State and entitled to share its 11th Amendment immunity is a question of federal law.

24. **Judgments: Civil Rights: Immunity.** Whether a money judgment against a state entity would be enforceable against the State is the critical consideration under 42 U.S.C. § 1983 (2012) for determining whether the entity is an arm of the State and therefore immune from suit by private persons.

25. **Actions: Immunity.** A suit against a state agency is a suit against the State, and both the State and state agencies can assert the State's sovereign immunity against suit.

26. **Constitutional Law: Judgments: Probation and Parole: Civil Rights: Immunity.** Because any judgment against the Board of Parole would be a judgment against the State, it is cloaked with the State's 11th Amendment immunity and cannot be named as a defendant in an action brought under 42 U.S.C. § 1983 (2012).

27. **Actions: Public Officers and Employees: Civil Rights: Liability.** A state official sued in his or her official capacity is not a person who can be sued under an action brought under 42 U.S.C. § 1983 (2012), unless the plaintiff seeks only prospective relief.

28. **Actions: Parties: Public Officers and Employees: Liability: Damages.** When a plaintiff seeks money damages against a state officer or employee in his or her official capacity, the State is the real party in interest, because the officer's liability in that capacity is liability for the state entity that the officer represents.

29. **Actions: Public Officers and Employees: Civil Rights: Immunity: Damages.** Under 42 U.S.C. § 1983 (2012), the State's sovereign immunity does not bar a claim for damages against state officials and employees who are sued in their personal capacities.

30. **Actions: Public Officers and Employees: Civil Rights: Liability.** To establish personal liability in an action brought under 42 U.S.C. § 1983 (2012), it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.

31. ____: ____: ____: ____. Acting under the color of state law does not mean that a state official or employee must have been complying with state law. Under 42 U.S.C. § 1983 (2012), liability exists as long as the action was taken within the scope of the defendant's official authority, even if the official or employee abused his or her authority.

32. **Actions: Public Officers and Employees: Immunity.** State officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.

33. **Constitutional Law: Due Process.** The Due Process Clause of the federal Constitution provides both procedural and substantive protections.

34. **Constitutional Law: Probation and Parole.** Parolees have a valuable liberty interest in their continued parole even though it depends upon their compliance with parole conditions. Parole is therefore protected by the 14th Amendment and requires at least minimal procedural protections before a State can terminate it.

35. **Due Process.** The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective.

36. **Due Process: Public Officers and Employees.** The due process protection in the substantive sense limits what the government may do in both its legislative and its executive capacities. But the criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.

37. ____: ____. Only the most egregious official conduct can be said to be arbitrary in the constitutional sense. The substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.

38. **Due Process: Negligence: Liability.** Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.

39. **Arrests.** Normally, when a State holds an individual in custody, the requisite level of conscience-shocking conduct is deliberate indifference, subject to the caveat that the standard is sensibly employed only when actual deliberation is practical.

40. **Constitutional Law: Arrests.** A plaintiff states a cognizable constitutional violation under the 8th or 14th Amendment when the plaintiff alleges that a state defendant—who had knowledge of the plaintiff's complaint that he or she was being unlawfully detained and the authority to investigate that complaint—was deliberately indifferent to the

plaintiff's liberty interest and the defendant's failure to take action resulted in the plaintiff's continued unlawful detention for more than an insignificant period.

41. **Public Officers and Employees: Immunity: Damages: Words and Phrases.** Public officials performing a quasi-judicial function have absolute immunity from damages for acts they commit within the scope of that function. A quasi-judicial function refers to one that is closely related to the judicial process.

42. **Public Officers and Employees: Immunity: Liability.** In determining whether to grant quasi-judicial immunity, courts examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.

43. **Probation and Parole.** The Board of Parole's mere reliance on evidence presented to it does not change the nature of its function of exercising independent discretion whether to grant, deny, or revoke parole.

44. **Public Officers and Employees: Civil Rights: Immunity: Pleadings.** Most executive officials and employees are limited to asserting qualified immunity as an affirmative defense against a personal capacity claim under 42 U.S.C. § 1983 (2012).

45. **Constitutional Law: Public Officers and Employees: Immunity: Damages: Proof.** Qualified immunity shields state officials from money damages unless a plaintiff alleges facts that would, if proved, show (1) the official violated a federally guaranteed right and (2) the constitutional or statutory right was clearly established at the time of the challenged conduct.

46. **Actions: Immunity.** Because qualified immunity is immunity from suit, a trial court should try to resolve immunity questions at the earliest possible stage in litigation.

47. **Actions: Public Officers and Employees: Immunity: Liability.** Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

48. **Constitutional Law: Public Officers and Employees.** Whether a federal right is clearly established presents a question of law. A court must consider whether the law is clearly established as it relates to the particular facts of a case. The unlawfulness of a defendant's conduct must be obvious or apparent in the light of preexisting law. That is, the contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right.

49. ____: ____. To show a clearly established federal right, the U.S. Supreme Court does not require a case to be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

50. ____: ____. A federal right can be established by a robust consensus of cases of persuasive authority.

51. **Public Officers and Employees: Negligence: Immunity.** Showing that a state defendant was negligent is insufficient to defeat a qualified immunity defense. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.

52. **Actions: Civil Rights: Liability.** Vicarious liability is unavailable in an action brought under 42 U.S.C. § 1983 (2012).

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Charles E. Wilbrand and Jeanelle R. Lust, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, Bijan Koohmaraie, and David A. Lopez for appellees.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

FUNKE, J.

## I. NATURE OF CASE

Johnnie W. Davis appeals from the district court's order that dismissed his negligence claim under the State Tort Claims Act (STCA)[1] and his due process and Eighth Amendment claims under 42 U.S.C. § 1983 (2012). Davis alleged that state officials and employees of the Nebraska Board of Parole (Parole Board) and the Department of Correctional Services (Department) were liable for mistakenly concluding that he was subject to a mandatory minimum sentence for a 1995

---

[1] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014).

habitual criminal conviction. Because of this mistake, the Parole Board revoked his parole and reincarcerated him for nearly 2 months before releasing him on parole again. The district court concluded that all of Davis' claims were barred by sovereign immunity, qualified immunity, or pleading deficiencies, and dismissed his complaint against all defendants.

We overrule Nebraska cases holding that an exception to the State's waiver of immunity for tort claims under the STCA is an affirmative defense that the State must plead and prove. Because the exceptions are jurisdictional in nature, we hold that a court can consider an STCA exception sua sponte and for the first time on appeal. Here, we conclude that the exception for claims of false imprisonment applies, which exception bars Davis' tort claim under the doctrine of sovereign immunity. We further conclude that the court did not err in ruling that the defendants were shielded from Davis' § 1983 action by absolute or qualified immunity.

## II. BACKGROUND

We glean the historical facts leading up to this action from the allegations in Davis' complaint.[2]

### 1. DAVIS' ARREST, PLEAS, AND SENTENCING

On May 10, 1995, Davis was charged with 11 different crimes and was alleged to be a habitual offender. In January 1996, under a plea agreement, Davis pled no contest to count I, attempted murder in the second degree, and count II, use of a deadly weapon to commit a felony. The State dismissed the remaining charges. In March, the court determined that Davis was a habitual offender and sentenced him to a term of 20 to 30 years' imprisonment for count I and a term of 10 to 20 years' imprisonment for count II, with the terms to be served consecutively.

---

[2] See *Jacob v. Nebraska Dept. of Corr. Servs.*, 294 Neb. 735, 884 N.W.2d 687 (2016).

2. CHANGES TO HABITUAL CRIMINAL SENTENCING

Before June 1995, the habitual criminal statute[3] provided the following:

> Whoever has been twice convicted of a crime, sentenced, and committed to prison . . . for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal and shall be punished by imprisonment . . . for a term of not less than ten nor more than sixty years . . . .[4]

In June 1995, the Legislature amended § 29-2221 to provide a mandatory minimum sentence for habitual criminal convictions:

> Whoever has been twice convicted of a crime, sentenced, and committed to prison . . . for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal and shall be punished by imprisonment . . . for a *mandatory minimum* term of ten years and a maximum term of not more than sixty years . . . .[5]

Other mandatory minimums apply if a defendant has been convicted of felonies not at issue here.[6] This amendment became effective in September 1995,[7] after Davis committed his crimes but before he entered his pleas and was sentenced.

Mandatory minimum sentences carry two consequences that a minimum term sentence comprising the same number of years does not. First, a "person convicted of a felony for which a mandatory minimum sentence is prescribed shall not be eligible for probation."[8] Second, the offender cannot become

---

[3] See Neb. Rev. Stat. § 29-2221 (Reissue 2016).

[4] See § 29-2221(1) (Cum. Supp. 1994).

[5] See, 1995 Neb. Laws, L.B. 371, § 13 (emphasis supplied), codified at § 29-2221(1) (Reissue 1995).

[6] See *id.*

[7] See *id.*, § 32.

[8] See Neb. Rev. Stat. § 28-105(4) (Reissue 2016).

eligible for parole until the mandatory minimum is served in full; good time credits can be applied to the maximum term of an indeterminate sentence only after the offender serves the mandatory minimum.[9]

### 3. DAVIS' RELEASE AND REINCARCERATION

In 2012, Davis was paroled. In 2014, the Department obtained warrants to arrest released prisoners for whom it had miscalculated their release dates. Davis' name was not on that list. But an unknown person later added his name to this list, and a warrant was issued for his arrest. In June, Davis was informed by his parole officer that he needed to turn himself in because his parole eligibility date had been miscalculated. Davis had not violated his parole, and he was employed. Before turning himself in to the Department on June 25, he informed the Department and his parole officer that the mandatory minimum provision did not apply to him and that his parole eligibility date was correct. Neither the Department nor the Parole Board investigated his claim.

At a parole hearing on July 29, 2014, the Parole Board revoked his parole despite his continued claim that he was not subject to the mandatory minimum amendment. On August 22, Davis was released again and given a certificate of parole. Six months after filing a "State Torts Claim" with the State's risk management division, Davis filed this action.

### 4. DAVIS' CLAIMS

Davis named 16 defendants in his complaint: the State; the Department; the Attorney General's office; the Parole Board; the former governor; the former Attorney General; the Department's former director, former records administrator, former general counsel, and two of its former attorneys; the Parole Board's former and current chairpersons, its former vice

---

[9] See, Neb. Rev. Stat. § 83-1,110 (Reissue 2014); *Caton v. State*, 291 Neb. 939, 869 N.W.2d 911 (2015); *Johnson v. Kenney*, 265 Neb. 47, 654 N.W.2d 191 (2002).

chairperson, and a current and former member. He sued all of the state officers and employees in their official and individual capacities.

For Davis' negligence claim under the STCA, he alleged that all the state defendants owed him a duty not to violate his civil rights and not to reincarcerate him or cause his reincarceration unless he had violated his parole. Davis alleged, condensed, that the defendants breached these duties when, despite his protests, they (1) failed to research the correct law and applied the wrong law to calculate his parole eligibility date, (2) determined that he had not served enough time, (3) added his name to a list of persons who should be arrested, and (4) reincarcerated him for 59 days when he should have been on parole.

Davis alleged that in 1997, the Attorney General issued an opinion at the request of the Department's director at that time.[10] The Attorney General stated that generally, the good time provisions in effect when an offender committed the offense are the ones that apply to calculating the offender's sentence,[11] unless a later amendment increases the amount of credit that an offender can receive.[12] Davis alleged a lack of institutional oversight, implementing policies, and training; and he alleged deliberate indifference to his rights. He alleged that he lost his job as a valet, his engraving business, and the house he was renting and that his arrest had strained his relationship with his girlfriend and his family. He alleged that this stress led to two occasions when he attempted suicide while incarcerated.

For his § 1983 due process claim, Davis alleged that the defendants' "acts, omissions, policies and practices [were] a substantial departure from accepted professional judgment, . . .

---

[10] Att'y Gen. Op. No. 97005 (Jan. 14, 1997).

[11] See *id.*, citing *Weaver v. Graham*, 450 U.S. 24, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981).

[12] *Id.*, citing *State v. Schrein*, 247 Neb. 256, 526 N.W.2d 420 (1995).

constitute[d] punishment, [and] reflect[ed] deliberate indifference to the known and obvious consequences to [him]." For his § 1983 Eighth Amendment claim, he alleged that the defendants' "acts, omissions, policies and practices . . . constitute[d] cruel and unusual punishment." He alleged the defendants' conduct had caused him to suffer unspecified economic and noneconomic damages.

## 5. HEARING ON DEFENDANTS' MOTION TO DISMISS

The defendants moved to dismiss Davis' negligence claim and § 1983 claims under Neb. Ct. R. Pldg. § 6-1112(b)(1) and (6). Their motion did not set out any specific grounds for a dismissal. At the hearing, the defendants argued that because Nebraska courts have held that the Parole Board's functions are quasi-judicial and inherently discretionary, Davis' claims against its members were not cognizable. They also argued that because the Parole Board had exclusive jurisdiction over Davis' parole revocation, the court should dismiss Davis' claims against the other defendants. Alternatively, they argued that Davis' § 1983 claims were deficient, because he had not alleged that the defendants were personally involved in determining that his parole should be revoked or in procuring his reincarceration. Regarding Davis' deliberate indifference allegations, the State argued that he would have to allege that the defendants knew he should not be reincarcerated and that they did so despite that knowledge. Regarding Davis' negligence claim, the State argued that the defendants who were not Board members were immune from suit under the doctrine of sovereign immunity, because they were performing a discretionary function.

Davis responded that the Department is the main state agency with the duty to determine parole eligibility dates and release dates from mandatory minimum sentences. He argued that these duties were ministerial and not discretionary and that the Parole Board was not entitled to quasi-judicial immunity. He argued that his release on parole 2 months after he was reincarcerated showed that the only reason for his parole

revocation was an incorrect calculation of his parole eligibility date.

Davis also argued that the Department had continuing duties—before, during, and after his parole revocation—to review the record, apply the law correctly, and inform the Parole Board of its determinations. He argued that these duties showed other state actors besides the Parole Board were involved in his parole revocation and reincarceration. As a result, he argued that he could not yet plead with particularity and that the court could not yet determine whether any of the defendants were entitled to qualified immunity, because he had not had an opportunity to discover what each state actor had done.

### 6. COURT'S ORDER

The court granted the defendants' motion to dismiss. In its order, the court concluded that the Parole Board and its members were immune from Davis' claims, because they perform a quasi-judicial function that is inherently discretionary. It stated that Davis' claims against the Parole Board's members arose solely out of their official function and that Nebraska law did not permit civil damages for decisions involving discretion. It dismissed Davis' claims against the Parole Board and its members with prejudice.

The court dismissed Davis' claims against the defendants who were not members of the Parole Board, because all of his claims arose from the revocation of his parole. The court determined that they were not involved in the revocation process and had no authority over the decision and that Davis had not alleged any facts connecting them to the revocation. It concluded that despite Davis' allegations about the Department's duties, the Parole Board had exclusive jurisdiction over his parole revocation, which did not involve the Attorney General's office or any other defendant who was not a Parole Board member.

Regarding Davis' negligence claim, the court reasoned that under the STCA, the State can be liable only to the same extent as a private person would be under similar circumstances and a private person cannot revoke parole. Additionally, the court concluded that Davis' "negligence action triggers the discretionary function exception [to the State's waiver of immunity] because his claims are based upon State employees' executing Nebraska statutes . . . and performing discretionary functions."

Regarding Davis' § 1983 claims, the court concluded that his claims against the State, state agencies, and state defendants in their official capacities were barred by sovereign immunity. It additionally found that the claims were not cognizable, because Davis had failed to "plead with any specificity that any named Defendant actually participated in any alleged constitutional violation." Alternatively, the court ruled that the defendants were entitled to qualified immunity from Davis' due process and Eighth Amendment claims. It concluded that the defendants' mistaken belief that Davis' parole eligibility date was correct did not deprive them of qualified immunity, because there is "no 'clearly established constitutional right' making State officials individually liable for erroneous parole revocations under the Eighth Amendment."

## III. ASSIGNMENTS OF ERROR

Davis assigns, consolidated and restated, that the court erred as follows:

(1) in dismissing all of his claims with prejudice;

(2) in determining that the Parole Board and its members are immune from his claims;

(3) in determining that the defendants who are not Parole Board members cannot be held liable for his reincarceration;

(4) in failing to weigh the role that the defendants who are not Parole Board members played in his reincarceration;

(5) in determining that the State has not waived its sovereign immunity for his negligence claim;

(6) in determining that his negligence claim is barred by the discretionary function exception to the State's waiver of sovereign immunity;

(7) in determining that he failed to plead his § 1983 claims with sufficient specificity;

(8) in determining that the defendants were entitled to qualified immunity; and

(9) in not allowing him to amend his complaint.

## VI. STANDARD OF REVIEW

[1,2] We review a district court's order granting a motion to dismiss de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[13] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face.[14] In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.[15]

[3-6] We independently review questions of law decided by a lower court.[16] The determination of constitutional requirements presents a question of law.[17] Statutory interpretation presents a question of law.[18] Whether a plaintiff's allegations present a claim that is barred by an exception to the State's waiver of tort immunity in a tort claims act presents a question of law.[19]

---

[13] *Jacob, supra* note 2.

[14] *First Neb. Ed. Credit Union v. U.S. Bancorp*, 293 Neb. 308, 877 N.W.2d 578 (2016).

[15] *Id.*

[16] *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017).

[17] *Id.*

[18] *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017).

[19] See *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014).

## V. ANALYSIS

### 1. State Officers and Employees Acting Within Scope of Their Offices or Employment Can Be Sued for Tortious Conduct Only in Their Official Capacities

Davis contends that he sued the defendants in their individual capacities and that some of the state employees acted outside of the scope of their duties. The State responds that Davis' negligence claim is not cognizable against the state defendants in their individual capacities. We agree.

[7] Section 81-8,209 of the STCA bars tort claims against the State, its agencies, and its employees unless the State has waived its immunity for the claim:

The State of Nebraska shall not be liable for the torts of its officers, agents, or employees, and no suit shall be maintained against the state, any state agency, or any employee of the state on any tort claim except to the extent, and only to the extent, provided by the [STCA].

Section 81-8,215 is the State's general waiver of tort immunity under the STCA.[20] In relevant part, it provides that the State "shall be liable in the same manner and to the same extent as a private individual under like circumstances."

[8-10] Statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together.[21] Section 81-8,215, when read in pari materia with § 81-8,209, operates as a limited waiver of the State's tort immunity, subject to specified exceptions that are set out in § 81-8,219.[22] The exceptions to the waiver of the State's tort immunity include claims based on the exercise

---

[20] See *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997).

[21] *D.I. v. Gibson*, 295 Neb. 903, 890 N.W.2d 506 (2017).

[22] See *Bronsen v. Dawes Cty.*, 272 Neb. 320, 722 N.W.2d 17 (2006). See, also, § 81-8,215; *McCormick v. City of Norfolk*, 263 Neb. 693, 641 N.W.2d 638 (2002); *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998).

or performance of a discretionary function by a state officer or employee.[23]

[11] Under § 81-8,210, whether a plaintiff has sued a state officer or employee in his or her individual capacity is irrelevant to whether the STCA bars a tort claim against that officer or employee. That is because § 81-8,210(4) defines a tort claim to mean a claim for money damages caused by the wrongful or negligent conduct of an officer or employee who was acting "within the scope of his or her office or employment, under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death." And § 81-8,209 authorizes tort liability for a state officer or employee only to the extent the STCA permits. So, under the STCA's definition of a tort claim, plaintiffs are limited to suing state officers and employees in their official capacities.[24] We have held that only when the officer or employee was *not* acting within the scope of his or her office or employment can a plaintiff pursue a tort claim against the officer or employee individually.[25] This means that if an officer or employee was acting within the scope of his or her office or employment and the alleged tortious conduct falls within an exception to the State's waiver of tort immunity, the STCA bars a tort claim against the officer or employee, regardless of the capacity in which he or she was purportedly sued.

Here, the state defendants could not have committed the tortious acts set out in Davis' complaint as private individuals. To the extent that Davis implies that the defendants may have acted in bad faith, that argument is relevant to

---

[23] See § 81-8,219(1).

[24] See *Kruger v. Nebraska*, 820 F.3d 295 (8th Cir. 2016). Accord, *D.M. v. State*, 23 Neb. App. 17, 867 N.W.2d 622 (2015); *Bojanski v. Foley*, 18 Neb. App. 929, 798 N.W.2d 134 (2011).

[25] See, e.g., *Lamb v. Fraternal Order of Police Lodge No. 36*, 293 Neb. 138, 876 N.W.2d 388 (2016); *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997); *D.M., supra* note 24.

whether the defendants are entitled to quasi-judicial immunity,[26] not to whether they were acting within the scope of their office or employment. So even if they were negligent or abused their authority, Davis' argument that they might have acted outside of the scope of their official duties is without merit.[27] Accordingly, whether they were sued in their individual capacities is irrelevant to the court's dismissal of Davis' negligence claim.

## 2. STATE CAN RAISE STCA EXCEPTION FOR FIRST TIME ON APPEAL

At oral arguments, the State argued that Davis' claim arose from a false imprisonment and was therefore barred by the intentional tort exception to the State's waiver of immunity. Under § 81-8,219(4), the State's waiver of immunity does not apply to "[a]ny claim arising out of . . . false imprisonment . . . ." But the State conceded that it did not raise this issue to the district court.

In *Maresh v. State*,[28] the State chose to raise the immunity issue as an affirmative defense. As a result, we held that the burden to prove the defense rested on the defendant.[29] We expanded this reasoning in *Sherrod v. State*,[30] in which we held that exceptions to the general waiver of the STCA are matters of defense that the State must plead and prove. And we have repeated this holding in other cases.[31]

---

[26] See *Noffsinger v. Nebraska State Bar Assn.*, 261 Neb. 184, 622 N.W.2d 620 (2001).

[27] See *Lamb, supra* note 25.

[28] *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992) (superseded in part by statute as stated in *Walton v. Patil*, 279 Neb. 974, 783 N.W.2d 438 (2010)).

[29] *Id.*

[30] *Sherrod, supra* note 20.

[31] See, *Hall, supra* note 19; *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010); *Reimers-Hild v. State*, 274 Neb. 438, 741 N.W.2d 155 (2007); *Lawry, supra* note 22; *Sherrod, supra* note 20; *D.M., supra* note 24.

In *Sherrod*, we held that subject matter jurisdiction is conferred by the general waiver of tort immunity found in § 81-8,215. We then cited four federal appellate decisions[32] and a state court decision[33] to hold that the government bears the burden to plead and prove the application of an exception to a waiver of sovereign immunity under a tort claims act.[34] But not all of the cited federal cases supported our holding that a sovereign immunity defense can be waived by failing to plead it, and the differences are important.

We primarily relied on the Seventh Circuit's holding in *Stewart v. United States*[35] that the Federal Tort Claims Act (FTCA) "conferred general jurisdiction of the subject matter of claims coming within its purview, and the exceptions referred to are available to the government as a defense only when aptly pleaded and proven." The court "thus viewed the discretionary function exception as a waivable affirmative defense rather than an impairment of its power to adjudicate."[36]

We also cited the Sixth Circuit's holding in *Carlyle v. United States, Dept. of the Army*[37] that a plaintiff can invoke jurisdiction only if the complaint is facially outside the exceptions of the FTCA. The court further stated that "[o]nly after a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by [the FTCA] does the burden fall on the government to prove the applicability

---

[32] See *Stewart v. United States*, 199 F.2d 517 (7th Cir. 1952). See, also, *Autery v. U.S.*, 992 F.2d 1523 (11th Cir. 1993); *Prescott v. U.S.*, 973 F.2d 696 (9th Cir. 1992); *Carlyle v. United States, Dept. of the Army*, 674 F.2d 554 (6th Cir. 1982).

[33] See *State v. Zimring*, 52 Haw. 477, 479 P.2d 205 (1970).

[34] *Sherrod, supra* note 20.

[35] *Stewart, supra* note 32, 199 F.2d at 519.

[36] *Richardson v. United States*, 943 F.2d 1107, 1113 (9th Cir. 1991).

[37] *Carlyle, supra* note 32.

of a specific provision of [the FTCA]."[38] And we cited a Ninth Circuit case, *Prescott v. U.S.*,[39] in which the court agreed with the Sixth Circuit's decision in *Carlyle*.

In addition to these three federal court cases that we cited in *Sherrod*, the Third Circuit also holds that a defendant in an action brought under the FTCA bears the burden to prove an exception to the government's waiver of immunity.[40]

But holding that the government bears the ultimate burden of proof is not the same as holding that the State's sovereign immunity can be waived by a state attorney's failure to raise it as a defense. And even among federal circuit courts that have decided the burden of proof question, they do not all agree that the FTCA exceptions are affirmative defenses for which the defendant bears the burden of persuasion.[41] Their disparity may stem from the U.S. Supreme Court's discussions of the jurisdictional nature of sovereign immunity.

The Supreme Court has clarified that a State's 11th Amendment immunity from suit is a convenient shorthand, but something of a misnomer, for state sovereign immunity, which is broader than the terms of the 11th Amendment.[42] Under the 11th Amendment, an unconsenting State is immune from federal court suits brought by its own citizens, as well as by citizens of another State.[43] The Supreme Court has held

---

[38] *Id.* at 556.

[39] *Prescott, supra* note 32.

[40] See *S.R.P. ex rel. Abunabba v. U.S.*, 676 F.3d 329 (3d Cir. 2012).

[41] See, *Wood v. U.S.*, 845 F.3d 123 (4th Cir. 2017); *Tsolmon v. U.S.*, 841 F.3d 378 (5th Cir. 2016); *Carroll v. U.S.*, 661 F.3d 87 (1st Cir. 2011); *Garcia v. U.S. Air Force*, 533 F.3d 1170 (10th Cir. 2008); *OSI, Inc. v. U.S.*, 285 F.3d 947 (11th Cir. 2002).

[42] *Northern Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 126 S. Ct. 1689, 164 L. Ed. 2d 367 (2006).

[43] *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

that states can waive their 11th Amendment immunity in federal court and that federal courts can ignore an immunity defense if a State has not raised it.[44] It has explained that a State can waive its 11th Amendment immunity, because the amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction."[45] And it has refused to hold that the FTCA exceptions are subject to the general rule that a waiver of sovereign immunity will be strictly construed in favor of the sovereign.[46] It has reasoned that in the context of the FTCA, "'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute,' . . . which 'waives the Government's immunity from suit in sweeping language.'"[47]

But the Supreme Court has also held that "[s]overeign immunity is by nature jurisdictional, . . . and the terms of the United States' '"consent to be sued in any court define that court's jurisdiction to entertain the suit."'"[48] In an FTCA appeal, it concluded that because the United States "can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions . . . to such waiver."[49]

---

[44] See, *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 118 S. Ct. 2047, 141 L. Ed. 2d 364 (1998); *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982).

[45] *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997).

[46] *Dolan v. Postal Service*, 546 U.S. 481, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006).

[47] *Id.*, 546 U.S. at 492.

[48] *Henderson v. United States*, 517 U.S. 654, 675-76, 116 S. Ct. 1638, 134 L. Ed. 2d 880 (1996). Accord *FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994).

[49] *United States v. Orleans*, 425 U.S. 807, 814, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976).

Additionally, in *United States v. Gaubert*,[50] the Supreme Court imposed a pleading standard that requires a plaintiff's factual allegations to support a finding that the FTCA's discretionary function exception does not apply when a presumption of discretionary conduct exists:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.[51]

Finally, the Supreme Court has held that a State's 11th Amendment immunity defense "sufficiently partakes of the nature of a jurisdictional bar" that it can be raised for the first time on appeal,[52] although it has discretion to determine that a State has waived that argument by failing to raise it on appeal.[53]

Not all federal circuit courts have weighed in on which party bears the ultimate burden of persuasion on the application of an FTCA exception.[54] Our analysis in *Sherrod* failed to recognize this. Specifically, our quote from *Autery v. U.S.*,[55] an 11th Circuit case that we cited, seemed to place that court in agreement with courts that hold the government bears the burden

---

[50] *United States v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).

[51] *Id.*, 499 U.S. at 324-25.

[52] *Edelman, supra* note 43, 415 U.S. at 678.

[53] See, *Patsy, supra* note 44; *Sosna v. Iowa*, 419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975).

[54] See, e.g., *Gibson v. U.S.*, 809 F.3d 807 (5th Cir. 2016); *Hart v. U.S.*, 630 F.3d 1085 (8th Cir. 2011).

[55] *Autery, supra* note 32.

to prove an exception.[56] But the 11th Circuit explicitly declined to decide the burden of proof question.[57] To the contrary, the court noted that the Supreme Court's decision in *Gaubert* appears to put the burden on the plaintiff to disprove the discretionary function exception.[58] The 10th Circuit has similarly noted that *Gaubert* casts doubt on the 9th Circuit's holding in *Prescott*—which we cited in *Sherrod*—that the government bears the ultimate burden of persuasion.[59] And the Sixth Circuit found it unnecessary to decide whether *Gaubert* affected its 1982 holding in *Carlyle*[60]—which we also cited in *Sherrod*— that the government bore the burden to prove an FTCA exception applied if a plaintiff's complaint was "'facially outside the exceptions of [28 U.S.C.] § 2680.'"[61]

Although the U.S. Supreme Court has not decided the ultimate burden of proof question for the FTCA exceptions, most federal circuit courts have held that the plaintiff bears the burden of alleging facts that show the exceptions to the government's waiver of immunity under the FTCA do not deprive the court of subject matter jurisdiction.[62] That includes the Sixth and Ninth Circuit decisions that we cited in *Sherrod*.[63]

In fact, in the Ninth Circuit case we relied on, the court made the following statement in a footnote: "It is, of course,

---

[56] See *Sherrod, supra* note 20.

[57] See *Autery, supra* note 32. Accord *Mesa v. U.S.*, 123 F.3d 1435 (11th Cir. 1997).

[58] See *id.*

[59] See *Kiehn v. U.S.*, 984 F.2d 1100 (10th Cir. 1993).

[60] *Carlyle, supra* note 32.

[61] See *Sharp ex rel. Estate of Sharp v. U.S.*, 401 F.3d 440, 443 n.1 (6th Cir. 2005).

[62] See, e.g., *Edison v. U.S.*, 822 F.3d 510 (9th Cir. 2016); *Gibson, supra* note 54; *Zelaya v. U.S.*, 781 F.3d 1315 (11th Cir. 2015); *Molchatsky v. U.S.*, 713 F.3d 159 (2d Cir. 2013); *Welch v. U.S.*, 409 F.3d 646 (4th Cir. 2005); *Carlyle, supra* note 32.

[63] See, *Prescott, supra* note 32; *Carlyle, supra* note 32.

'well-established law that . . . jurisdictional defenses cannot be waived by the parties and may be raised for the first time on appeal or even raised by a court sua sponte.'"[64] In a previous case, it had remanded the matter for the district court to determine whether the discretionary function applied even though the government had not raised the exception: "[I]f the discretionary function applies, the claims should be dismissed for lack of jurisdiction. This court must consider jurisdiction even if the parties have not challenged it."[65] Other federal circuit courts agree that an FTCA exception can be considered for the first time on appeal, at least where the parties do not dispute facts relevant to the application of an exception.[66]

Similarly, the Eighth Circuit has held that because a court lacks subject matter jurisdiction if an alleged act falls within the discretionary function exception, a district court does not err in sua sponte ruling that it lacks jurisdiction and dismissing the plaintiff's action, where the jurisdictional facts are undisputed and the exception clearly applies.[67]

That leaves the Seventh Circuit's holding in *Stewart v. United States*[68] as the primary authority for our holding in *Sherrod* that the State's waiver of immunity can be forfeited if the State fails to plead and prove an STCA exception. *Stewart* remains good law in the Seventh Circuit,[69] and, as noted, the Third Circuit agrees.[70] But in a 2016 unpublished decision, the Third Circuit held that a federal district court did not err

---

[64] *Prescott, supra* note 32, 973 F.2d at 701 n.2, citing *Roberts v. U.S.*, 887 F.2d 899 (9th Cir. 1989).

[65] *Roberts, supra* note 64, 887 F.2d at 900.

[66] See, *Garling v. U.S. E.P.A.*, 849 F.3d 1289 (10th Cir. 2017); *Medina v. U.S.*, 259 F.3d 220 (4th Cir. 2001); *Hydrogen Technology Corp. v. U.S.*, 831 F.2d 1155 (1st Cir. 1987).

[67] See *Hart, supra* note 54.

[68] *Stewart, supra* note 32.

[69] See, e.g., *Keller v. U.S.*, 771 F.3d 1021 (7th Cir. 2014).

[70] See *S.R.P. ex rel. Abunabba, supra* note 40.

in sua sponte ruling that the plaintiff's claim was barred by the discretionary function exception.[71] It stated that although the exception is analogous to an affirmative defense, it is also jurisdictional on its face, which is a question that a court has an obligation to address.[72] Similarly, in a 1995 decision, the Seventh Circuit did not treat *Stewart* as binding precedent and independently decided on appeal that the relevant statutes and regulations showed the discretionary function exception barred the plaintiff's claim.[73]

These cases illustrate that because sovereign immunity is jurisdictional in nature, and because courts have a duty to determine whether they have subject matter jurisdiction over a matter, treating the FTCA exceptions as waivable affirmative defenses places courts in an impossible position when a jurisdictional problem appears on the face of a plaintiff's complaint.

[12-15] This court has repeatedly held that an appellate court has an independent duty to decide jurisdictional issues on appeal, even if the parties have not raised the issue.[74] And when a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, an appellate court also lacks the power to adjudicate the merits of the claim.[75] We have held that a trial court lacks subject matter jurisdiction over an action against the State unless the State has consented to suit.[76]

---

[71] See *Bedell v. United States*, 669 Fed. Appx. 620 (3d Cir. 2016).

[72] *Id.*

[73] See *Rothrock v. U.S.*, 62 F.3d 196 (7th Cir. 1995).

[74] E.g., *J.S. v. Grand Island Public Schools, ante* p. 347, 899 N.W.2d 893 (2017).

[75] E.g., *Landrum v. City of Omaha Planning Bd., ante* p. 165, 899 N.W.2d 598 (2017).

[76] See, *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013); *Engler v. State*, 283 Neb. 985, 814 N.W.2d 387 (2012); *McKenna v. Julian*, 277 Neb. 522, 763 N.W.2d 384 (2009); *Northwall v. State*, 263 Neb. 1, 637 N.W.2d 890 (2002).

And lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.[77] As discussed, however, we have also held in several cases that the exceptions to the STCA and the Political Subdivisions Tort Claims Act are affirmative defenses that the State must plead and prove.[78]

We conclude that these lines of cases are irreconcilable to the extent that the latter cases imply that a state attorney can waive the State's immunity from suit by failing to raise an exception in a responsive pleading. But when a plaintiff's complaint shows on its face that a claim is barred by one of the exceptions, the State's inherent immunity from suit is a jurisdictional issue that an appellate court cannot ignore.

[16,17] The doctrine of stare decisis requires that we adhere to our previous decisions unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.[79] The doctrine is entitled to great weight, but it does not require us to blindly perpetuate a prior interpretation of the law if we conclude the prior interpretation was clearly incorrect.[80]

[18] We conclude that our cases holding that the State must plead and prove an exception to the STCA are clearly erroneous to the extent they can be read to hold that a state attorney waives an immunity defense under § 81-8,219 by failing to raise it in a pleading or to a trial court. To the extent that they can be so interpreted, the cases cited in footnotes 28 and 31 are overruled. We hold that an exception to the State's waiver of immunity under the STCA is an issue that the State may raise for the first time on appeal and that a court may consider sua sponte.

---

[77] E.g., *J.S., supra* note 74.

[78] See cases cited *supra* notes 28 and 31.

[79] See *Cano v. Walker, ante* p. 580, ___ N.W.2d ___ (2017).

[80] See *id.*

[19] This holding does not mean that the State may litigate factual disputes relevant to the application of an STCA exception for the first time on appeal. But an appellate court has the power to determine whether a plaintiff's allegations, taken as true, show that a tort claim is facially barred by an STCA exception under § 81-8,219. We turn to the allegations in Davis' complaint.

Davis alleged that he turned himself in to authorities after his parole officer directed him to do so because his parole eligibility date had been miscalculated. He alleged that he was reincarcerated for almost 2 months despite his protests that his parole eligibility date had been correctly calculated. We conclude that these allegations, accepted as true, are facially within the exception to the State's waiver of immunity for tort claims arising out of false imprisonment.[81]

[20] False imprisonment is the unlawful restraint of a person's liberty against his or her will.[82] Any intentional conduct that results in the placing of a person in a position where he or she cannot exercise his or her will in going where he or she may lawfully go may constitute false imprisonment.[83] The Court of Appeals has previously held that a plaintiff's claim that prison officials detained him past his correct release date stated a claim of false imprisonment.[84] We agree and conclude that the same reasoning applies here. Davis' allegations that the prison officials negligently calculated his parole eligibility date does not preclude the application of the false imprisonment exception. The heart of his claim is that he was unlawfully reincarcerated, and no further discovery could correct that fundamental defect in his complaint. His negligence claim

---

[81] See § 81-8,219(4).

[82] *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 629 N.W.2d 511 (2001).

[83] *Id.*

[84] See *Cole v. Clarke*, 8 Neb. App. 614, 598 N.W.2d 768 (1999). See, also, Annot., 152 A.L.R. Fed. 605, § 5 (1999); 35A Am. Jur. 2d *Federal Tort Claims Act* § 91 (2010).

against the state defendants arose out of their alleged contribution to his unlawful imprisonment, their failure to correct the mistake, or their failure to ensure that such mistakes would not occur.

[21] As explained, under the STCA, if an officer or employee was acting within the scope of his or her office or employment and the alleged tortious conduct falls within an exception to the State's waiver of tort immunity, the STCA bars a tort claim against the officer or employee, regardless of the capacity in which he or she was purportedly sued. Because the State has not consented to suit for claims arising out of a false imprisonment, Davis has not alleged a tort claim that is plausible on its face against any named defendant. Although our reasoning necessarily differs from the district court's, we may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.[85] The court did not err in dismissing Davis' tort claim. We turn to his § 1983 claims.

### 3. VALIDITY OF DAVIS' § 1983 CLAIMS AGAINST STATE OFFICERS AND EMPLOYEES

Davis concedes that the court properly dismissed his § 1983 claims against the State, its agencies, and its employees in their official capacities. But he contends that the court erred in dismissing his § 1983 claims against the defendants in their individual capacities. Section 1983 provides, in relevant part, the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[85] E.g., *Phillips v. Liberty Mut. Ins. Co.*, 293 Neb. 123, 876 N.W.2d 361 (2016).

### (a) Sovereign Immunity Bars Davis' § 1983
### Claims Against State, Arms of State,
### and State Defendants Sued in
### Their Official Capacities

[22,23] The U.S. Supreme Court has interpreted § 1983 to mean that "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" that can be sued under the statute.[86] Whether a state entity is an arm of the State and entitled to share its 11th Amendment immunity is a question of federal law.[87]

[24,25] Under federal law, whether a money judgment against a state entity would be enforceable against the State is the critical consideration under § 1983 for determining whether the entity is an arm of the State and therefore immune from suit by private persons.[88] Accordingly, we have held that a suit against a state agency is a suit against the State and that both the State and state agencies can assert the State's sovereign immunity against suit.[89]

[26] The Department is a state agency. Structurally, the Parole Board is more an arm of the State than a state agency. It is not a political subdivision or a statutorily created agency. It is a constitutionally created body of state government that is part of the executive branch.[90] Because any judgment against the Parole Board would be a judgment against the State, it is cloaked with the State's 11th Amendment immunity and cannot be named as a defendant in an action brought under § 1983.

---

[86] See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

[87] See *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997).

[88] See *Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30, 115 S. Ct. 394, 130 L. Ed. 2d 245 (1994). See, also, *Regents of Univ. of Cal., supra* note 87.

[89] See, e.g., *Anthony K. v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 540, 855 N.W.2d 788 (2014).

[90] *Adams v. State*, 293 Neb. 612, 879 N.W.2d 18 (2016).

[27,28] Similarly, the U.S. Supreme Court has interpreted § 1983 to mean that a state official sued in his or her official capacity is not a person who can be sued in an action brought under § 1983, unless the plaintiff seeks only prospective relief.[91] Prospective relief is permitted against state officials, because the doctrine of *Ex parte Young*[92] applies to § 1983 claims.[93] Under that doctrine, a State's 11th Amendment immunity does not bar a suit against state officers when the plaintiff seeks only prospective relief for ongoing violations of federal rights.[94] But when a plaintiff seeks money damages against a state officer or employee in his or her official capacity, the State is the real party in interest, because the officer's liability in that capacity is liability for the state entity that the officer represents.[95]

Davis is not seeking prospective relief from any ongoing official state act or policy. He is seeking money damages for past deprivations of constitutional rights. Accordingly, the court properly dismissed Davis' § 1983 claims against the State, the Parole Board, the Department, and all state defendants sued in their official capacities.

(b) Personal Capacity Claims Under § 1983

[29] Under 42 U.S.C. § 1983, the State's sovereign immunity does not bar a claim for damages against state officials and employees who are sued in their personal capacities.[96]

---

[91] See *Will, supra* note 86. Accord *Wilkinson v. Dotson*, 544 U.S. 74, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005).

[92] *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

[93] See *Will, supra* note 86.

[94] See *Doe, supra* note 31, citing *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002).

[95] See *Anthony K., supra* note 89, citing *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

[96] See, *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Accord, e.g., *Suarez Corp. Industries v. McGraw*, 125 F.3d 222 (4th Cir. 1997).

Personal capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law."[97] The U.S. Supreme Court has clarified that an earlier reference it made to the capacity in which an officer or employee *acted* "is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."[98]

[30,31] "'[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'"[99] Acting under the color of state law does not mean that a state official or employee must have been complying with state law. Under § 1983, liability exists as long as the action was taken within the scope of the defendant's official authority, even if the official or employee abused his or her authority.[100]

[32] But state defendants are entitled to assert personal common-law immunity defenses against a § 1983 action.[101] "While the plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.'"[102]

The state defendants argue that they are entitled to two types of personal immunity defenses against Davis' § 1983 claims: absolute immunity and qualified immunity. Before discussing the defendants' immunity defenses, we consider the

---

[97] *Hafer, supra* note 96, 502 U.S. at 25.

[98] *Id.*, 502 U.S. at 26.

[99] *Id.*, 502 U.S. at 25 (emphasis in original), citing *Graham, supra* note 95.

[100] *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Monroe v. Pape*, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961), *overruled on other grounds, Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

[101] See *Filarsky v. Delia*, 566 U.S. 377, 132 S. Ct. 1657, 182 L. Ed. 2d 662 (2012).

[102] *Hafer, supra* note 96, 502 U.S. at 25, quoting *Graham, supra* note 95.

validity of Davis' claims that the state defendants violated his due process and Eighth Amendment rights.

### (c) Deliberate Indifference to a Plaintiff's Unlawful Incarceration States Substantive Due Process or Eighth Amendment Violation

[33] Under the Due Process Clause of the federal Constitution, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."[103] The Due Process Clause provides both procedural and substantive protections.[104]

[34] In *Morrissey v. Brewer*,[105] the U.S. Supreme Court held that parolees have a valuable liberty interest in their continued parole even though it depends upon their compliance with parole conditions. Parole is therefore protected by the 14th Amendment and requires at least minimal procedural protections before a State can terminate it.[106]

But Davis has raised a substantive due process argument. He claims that the state defendants were deliberately indifferent to his repeated claim, before and after his reincarceration, that because the mandatory minimum sentence did not apply to him, he had been properly released on parole. Relatedly, he argues that the defendants violated his Eighth Amendment right to be free from incarceration without a penological justification.

Federal courts have addressed both substantive due process claims and Eighth Amendment claims resting on a plaintiff's unlawful detention or incarceration. Regardless of the asserted right, these cases require a plaintiff to show the same level

---

[103] U.S. Const. amend. XIV, § 1.

[104] See, e.g., *Citizens for Eq. Ed. v. Lyons-Decatur Sch. Dist.*, 274 Neb. 278, 293, 739 N.W.2d 742, 756 (2007), citing *Harrah Independent School Dist. v. Martin*, 440 U.S. 194, 99 S. Ct. 1062, 59 L. Ed. 2d 248 (1979).

[105] *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

[106] *Id.*

of culpability for a State's failure to investigate the plaintiff's claim that he or she was being unlawfully held: deliberate indifference.

[35-38] The "'touchstone of due process is protection of the individual against arbitrary action of government,' . . . whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective."[107] The "due process protection in the substantive sense limits what the government may do in both its legislative . . . and its executive capacities."[108] But the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue."[109] "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"[110] "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"[111] "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."[112]

The U.S. Supreme Court applied these principles in *Baker v. McCollan*,[113] a case from the Fifth Circuit involving the respondent's mistaken arrest on a warrant and a sheriff's office's unlawful detention of him for 3 days, despite information at the office that would have revealed the mistake. The

---

[107] *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998).

[108] *Id.*, 523 U.S. at 846.

[109] *Id.*

[110] *Id.*

[111] *Id.*, 523 U.S. at 847.

[112] *Id.*, 523 U.S. at 849.

[113] See *Baker v. McCollan*, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 443 (1979).

sheriff verified the respondent's claim as soon as he learned about it and released him.[114] The Fifth Circuit held that the sheriff had a "duty to exercise due diligence in making sure that the person arrested and detained is actually the person sought under the warrant and not merely someone of the same or a similar name."[115] It concluded that a jury could find the sheriff was not entitled to qualified immunity because he had caused the respondent's detention by unreasonably failing to have adequate identification procedures in place.

The Supreme Court reversed. It concluded that the Fifth Circuit erred in applying tort principles to conclude that the sheriff had violated the respondent's constitutional right to be free of a liberty deprivation without due process of law. The Court acknowledged that at some point, an unlawful detention would cause a constitutional deprivation:

Obviously, one in the respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. . . . We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law."[116]

But the Court concluded that a 3-day detention could not show a constitutional deprivation. "[F]alse imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."[117]

---

[114] *Id.*

[115] *McCollan v. Tate*, 575 F.2d 509, 513 (5th Cir. 1978), *reversed, Baker, supra* note 113.

[116] *Baker, supra* note 113, 443 U.S. at 144-45.

[117] *Id.*, 443 U.S. at 146.

[39] In *Baker*, the Court had no need to determine the applicable culpability standard for a valid unconstitutional detention claim, because it concluded that the respondent had failed to show a constitutional deprivation. But normally, when a State holds an individual in custody, the requisite level of conscience-shocking conduct is deliberate indifference, subject to the caveat that the standard is "sensibly employed only when actual deliberation is practical."[118]

It is true that courts usually apply the deliberate indifference standard of culpability when a State has failed to provide for an inmate's basic needs.[119] But federal courts of appeals have applied the deliberate indifference standard to substantive due process claims involving wrongful detentions.[120] "When 'actual deliberation is practical,' establishing a substantive-due-process violation requires proof of deliberate indifference . . . ."[121] Some federal courts have explicitly distinguished *Baker*, concluding that the short duration of that detention was crucial to the decision and that *Baker* did not preclude liability under § 1983 for all false imprisonment claims.[122]

But in cases involving both an unlawful pretrial detention and an overdetention of an inmate, federal courts have held that state officials who are deliberately indifferent to an individual's claim that he or she is being unlawfully detained violate the individual's substantive due process right to be free from wrongful incarceration without due process of law.[123]

---

[118] See *County of Sacramento, supra* note 107, 523 U.S. at 851.

[119] See *id.*

[120] See, e.g., *Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004); *Cannon v. Macon County*, 1 F.3d 1558 (11th Cir. 1993), *modified on denial of rehearing* 15 F.3d 1022 (11th Cir. 1994).

[121] See *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013).

[122] See, e.g., *Davis, supra* note 120, *Cannon, supra* note 120; *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992); *Haygood v. Younger*, 769 F.2d 1359 (9th Cir. 1985).

[123] See, *Davis, supra* note 120 (citing cases); *Cannon, supra* note 120.

Similarly, federal courts have held that detaining an inmate after the expiration of his or her sentence without penological justification is an Eighth Amendment violation when prison officials are deliberately indifferent to the inmate's liberty interest.[124] These parallel lines of cases exist because the U.S. Supreme Court has held that conditions of pretrial detention are analyzed under the Due Process Clause, while conditions of incarceration after a conviction are analyzed under the Eighth Amendment.[125] But the culpability standard is the same.

Finally, in an action under *Bivens v. Six Unknown Fed. Narcotics Agents*[126] "(the § 1983 counterpart for actions against federal officials),"[127] the Ninth Circuit held that federal prison officials who were deliberately indifferent to an inmate's claim that they had miscalculated his release date were not entitled to qualified immunity.[128] The court reasoned that the officials had violated a clear duty to investigate his claim under federal regulations and policies when he raised a substantial question regarding the accuracy of the agency calculation on which the officials had relied in ignoring his protests.

In sum, whether a plaintiff's § 1983 claim rests on an alleged violation of the 8th or 14th Amendment or a government official's violation of a clear regulatory duty intended to protect those rights, federal courts have expressly or implicitly premised liability on a finding that the government officials were

---

[124] See, *Burke v. Johnston*, 452 F.3d 665 (7th Cir. 2006); *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Haygood, supra* note 122.

[125] See, *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Wharton v. Danberg*, 854 F.3d 234 (3d Cir. 2017).

[126] See *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

[127] *Powers v. Hamilton Cty. Pub. Def. Comm.*, 501 F.3d 592, 610 (6th Cir. 2007).

[128] *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990). See, also, *Burke, supra* note 124.

deliberately indifferent in failing to investigate the plaintiff's claim that his sentence was miscalculated.[129] Deliberate indifference represents the consensus of federal appellate courts on the type of government overdetention or false imprisonment that will result in a constitutional deprivation.

[40] We therefore hold that a plaintiff states a cognizable constitutional violation under the 8th or 14th Amendment when the plaintiff alleges that a state defendant—who had knowledge of the plaintiff's complaint that he or she was being unlawfully detained and the authority to investigate that complaint—was deliberately indifferent to the plaintiff's liberty interest and the defendant's failure to take action resulted in the plaintiff's continued unlawful detention for more than an insignificant period.

Davis alleged the state defendants were deliberately indifferent to his protests that they had miscalculated his parole eligibility date and alleged he was reincarcerated for more than an insignificant amount of time. So we turn to the reasons that the district court dismissed his claims.

(d) Court Properly Dismissed Davis' § 1983
Claim Against Parole Board and Its
Past and Current Members

[41] The court implicitly concluded that the Parole Board and its members had absolute immunity from Davis' claims by ruling that its members were performing a quasi-judicial function. Public officials performing a quasi-judicial function have absolute immunity from damages for acts they commit within the scope of that function.[130] A quasi-judicial function refers to one that is closely related to the judicial process.[131]

[42] In determining whether to grant quasi-judicial immunity, courts examine the nature of the functions with which

[129] See, *Burke, supra* note 124; *Davis, supra* note 120, *Moore, supra* note 124; *Alexander, supra* note 128.

[130] See *Frey v. Blanket Corp.*, 255 Neb. 100, 582 N.W.2d 336 (1998).

[131] See *Noffsinger, supra* note 26.

a particular official or class of officials has been lawfully entrusted to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.[132]

> [W]here an officer is invested with discretion and is empowered to exercise his or her judgment in matters brought before the officer, he or she is sometimes called a quasi-judicial officer and when so acting, is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority and without willfulness, malice, or corruption. . . . However, quasi-judicial immunity from any suit or damages based upon the performance of duties within a person's authority attaches not to particular offices, but to particular official functions.[133]

We have previously recognized that the Parole Board exercises independent discretion in deciding whether to grant parole to a convicted offender.[134] In addition, federal appellate courts hold that parole boards have absolute immunity from suit when they perform quasi-judicial functions such as granting, denying, or revoking parole.[135]

But Davis contends that the Parole Board was not exercising discretion in revoking his parole, because it was not reviewing his conduct while on parole. He argues that the revocation hearing dealt only with the calculation of his parole eligibility, which is a ministerial function to which quasi-judicial immunity does not attach. Davis argues that instead of exercising discretion, the Board blindly followed the Department's lead

---

[132] *Id.*

[133] *Id.* at 188-89, 622 N.W.2d at 624.

[134] See *Pratt v. Nebraska Bd. of Parole*, 252 Neb. 906, 567 N.W.2d 183 (1997).

[135] See, *Swift v. California*, 384 F.3d 1184 (9th Cir. 2004); *Montero v. Travis*, 171 F.3d 757 (2d Cir. 1999); *Wilson v. Kelkhoff*, 86 F.3d 1438 (7th Cir. 1996); *Sultenfuss v. Snow*, 894 F.2d 1277 (11th Cir. 1990).

in incorrectly applying a mandatory minimum sentencing statute to revoke his parole.

At oral arguments, Davis relied on our decision in *Pratt v. Nebraska Bd. of Parole*.[136] He argued that it showed the Parole Board was not entitled to immunity here, because it was not exercising discretion. In *Pratt*, we considered an earlier version of § 83-1,110, which set out the calculation requirements for determining an offender's parole eligibility date. We held that the finding of parole eligibility is a ministerial duty that can be enforced through a writ of mandamus. When we decided *Pratt*, a recommendation of parole from an inmate's sentencing judge was a circumstance that required the Parole Board to consider the inmate for parole, and such a letter had been presented to the Parole Board. We stated that unlike the decision whether to grant parole,

> a finding of eligibility for parole was not discretionary. Rather, it was the duty of the Board to recognize the offender's parole eligibility upon a showing of certain facts, regardless of the Board's own judgment or opinion concerning the propriety or impropriety of such a determination. Therefore, the Board's duty to recognize [the prisoner's] parole eligibility was ministerial. The Board did not have to grant [him] parole, but it had the duty to consider him for parole.[137]

[43] But this case is distinguishable from *Pratt*, because the Parole Board was not refusing to exercise its discretion to grant a parole. It was exercising its discretion to revoke a parole in reliance on information provided to it from the Department. Nebraska's statutes require the Department to provide the Parole Board with its calculations,[138] and the Parole Board is entitled to rely on them. Davis points to no statute or

---

[136] *Pratt, supra* note 134.

[137] *Id.* at 911, 567 N.W.2d at 188.

[138] See Neb. Rev. Stat. §§ 83-1,107 (Cum. Supp. 2016) and 83-1,109 (Reissue 2014).

regulation that requires the Parole Board to perform its own calculations or investigations. Its mere reliance on evidence presented to it does not change the nature of its function of exercising independent discretion whether to grant, deny, or revoke parole. Accordingly, the district that did not err in dismissing Davis' § 1983 claims against the Parole Board's past or current members.

### (e) Department's Employees Are Entitled to Qualified Immunity From Davis' § 1983 Claims

The court ruled that the state defendants who were not members of the Parole Board were entitled to qualified immunity from his due process and Eighth Amendment claims or that Davis had not alleged their personal participation in an alleged constitutional violation with sufficient specificity.

### (i) General Principles of Qualified Immunity

[44,45] Most executive officials and employees are limited to asserting qualified immunity as an affirmative defense against a personal capacity claim under § 1983.[139] Qualified immunity shields state officials from money damages unless a plaintiff alleges facts that would, if proved, show (1) the official violated a federally guaranteed right and (2) the constitutional or statutory right was clearly established at the time of the challenged conduct.[140] A court can address the two components of the qualified immunity analysis in either order.[141]

---

[139] See *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

[140] See, *Filarsky, supra* note 101; *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); *Elder v. Holloway*, 510 U.S. 510, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994). Accord, e.g., *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014); *Ashby v. State*, 279 Neb. 509, 779 N.W.2d 343 (2010).

[141] *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Potter, supra* note 140.

[46,47] Because qualified immunity is immunity from suit, a trial court should try to resolve "'immunity questions at the earliest possible stage in litigation.'"[142] "'[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.'"[143]

[48] Whether a federal right is clearly established presents a question of law.[144] A court must consider whether the law is clearly established as it relates to the particular facts of a case:

> "[C]learly established law" should not be defined "at a high level of generality." . . . As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. . . . Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."[145]

The unlawfulness of a defendant's conduct must be obvious or apparent in the light of preexisting law.[146] That is, the contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right.[147]

[49,50] To show a clearly established federal right, the U.S. Supreme Court does "'not require a case [to be] directly on

---

[142] *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part on other grounds, Pearson, supra* note 141.

[143] *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012), quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

[144] *Elder, supra* note 140.

[145] *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (citations omitted).

[146] *Id.*

[147] See, e.g., *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014).

point, but existing precedent must have placed the statutory or constitutional question beyond debate.'"[148] Additionally, both the Supreme Court and federal circuit courts have stated that a federal right can be established by a robust consensus of cases of persuasive authority.[149]

[51] Showing that a state defendant was negligent is insufficient to defeat a qualified immunity defense.[150] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."[151]

### (ii) Application of Qualified Immunity Principles to Department Employees

Davis alleged that he continually told Department employees verbally and through letters that his parole eligibility date had been correctly calculated and that the mandatory minimum sentence did not apply to him. The court essentially concluded that there was no clearly established right to have an error-free parole revocation and that the defendants' mistaken belief that Davis' parole eligibility date was incorrect did not strip them of qualified immunity.

We agree that Davis had no right to an error-free proceeding. However, the qualified immunity issues were whether the defendants were deliberately indifferent to Davis' oral and written protests—before and after they reincarcerated him—that

---

[148] *Taylor v. Barkes*, ___ U.S. ___, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015).

[149] See, e.g., *Ashcroft, supra* note 140; *Wilson v. Layne*, 526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999); *Booker v. South Carolina Dept. of Corrections*, 855 F.3d 533 (4th Cir. 2017); *De La Rosa v. White*, 852 F.3d 740 (8th Cir. 2017); *Mammaro v. N.J. Div. of Child Prot. and Permanency*, 814 F.3d 164 (3d Cir. 2016).

[150] See, *Potter, supra* note 140; *Ashby, supra* note 140.

[151] *Potter, supra* note 140, 287 Neb. at 740, 844 N.W.2d at 750, citing *Messerschmidt, supra* note 143.

they had calculated his parole eligibility date incorrectly, and whether a reasonable Department official or employee should have known that the time the Department took to correct the calculation of Davis' parole eligibility date was unlawful in light of the clearly established law.

The court could not know whether the Department employees were deliberately indifferent to Davis' protests or which employees or officials would have seen his letters protesting his reincarceration. The State did not file a responsive pleading. It is true that the Department's second release of Davis 2 months later is some indication that its employees investigated his complaint. But giving Davis the benefit of all reasonable inferences, his allegations could equally suggest that for a significant period of this time, the Department's employees did nothing to investigate. This is a reasonable inference because the computation did not involve complex facts or laws.

But we do not believe that at the time of Davis' reincarceration, the law clearly established that the Department employees would violate a federal right by failing to promptly respond to Davis' claim that they had miscalculated his parole eligibility date. Both the Eighth Circuit and the Seventh Circuit have held that under both the 8th and 14th Amendments, inmates have a clearly established right to be free from wrongful, prolonged incarceration.[152] And we conclude that extending this rule to wrongful recommitments based on a miscalculated parole eligibility date is required by the U.S. Supreme Court's holding in *Morrissey* that parolees have a valuable liberty interest in their continued parole.[153]

But the typical miscalculation case involves a State's wrongful incarceration of an inmate beyond his or her release date. Davis has not pointed to a case in which a court has held that a State has or can violate an offender's 14th Amendment

---

[152] See, *Figgs v. Dawson*, 829 F.3d 895 (7th Cir. 2016); *Scott, supra* note 121.

[153] See *Morrissey, supra* note 105.

rights by being deliberately indifferent to the parolee's claim that he or she has been wrongly reincarcerated. Our research has uncovered only one somewhat comparable federal appellate decision dealing with a parolee's delayed release from parole.[154] Moreover, in *Morrissey*, the Court held that a lapse of 2 months before a parolee receives a revocation hearing for an alleged parole violation is not unreasonable.[155]

Given this precedent and the paucity of persuasive case law dealing with a State's deliberate indifference to a parolee's claim of a mistaken revocation, the Department's officials and employees did not violate a clearly established right to a prompt investigation of Davis' complaint.

### (f) Court Properly Dismissed Davis' § 1983 Claim Against State Defendants With No Responsibility for Parole Eligibility Calculations

[53] Vicarious liability is unavailable in a § 1983 action: "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[156] But even if Davis could show that the state defendants had knowledge of his complaints and were deliberately indifferent to them, he could not show that they should have known they would violate a clearly established right by doing so. The court therefore did not err in dismissing his § 1983 claims against all the defendants.

Because we conclude that the state defendants were entitled to qualified immunity against Davis' § 1983 claims against the defendants, we do not reach his assignment that the court erred in determining that he had failed to plead his § 1983 claims with sufficient specificity.

---

[154] See *Hankins v. Lowe*, 786 F.3d 603 (7th Cir. 2015).

[155] See *Morrissey, supra* note 105.

[156] *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

### 4. DAVIS' OPPORTUNITY TO AMEND

Finally, Davis argues that he asked the court for leave to amend during the hearing and that the court erred in dismissing his complaint without giving him that opportunity. Under § 6-1115(a), a "party may amend [its] pleading once as a matter of course before a responsive pleading is served."

The district court did not specify whether it was dismissing Davis' complaint with prejudice, but we agree that this was the court's intent. Nevertheless, there is no need to separately consider the appropriateness of that dismissal. Our review of Davis' appeal has subsumed his argument that the court erred in dismissing his complaint without an opportunity to amend. And that review has led us to the conclusion that an amendment would not cure the defects in Davis' complaint.

## VI. CONCLUSION

Regarding Davis' negligence claim, we conclude that the claim rests on allegations that the state defendants unlawfully reincarcerated him because they miscalculated his parole eligibility date. As such, his claim is one arising out of false imprisonment, which is a claim barred by sovereign immunity, because it is specifically excepted from the State's waiver of immunity under the STCA. Although the defendants did not raise this exception to the district court, we conclude that an STCA exception can be raised for the first time on appeal and considered by a court sua sponte.

Regarding Davis' § 1983 claims, the court did not err in dismissing his claims against the Parole Board, because its members were entitled to absolute quasi-judicial immunity from suit and the Parole Board itself is an arm of the State that cannot be sued in a § 1983 action. The court also did not err in dismissing Davis' § 1983 claims against the remaining state defendants, because he cannot show that they violated a clearly established right to a prompt investigation of Davis' complaint that he was wrongly reincarcerated.

AFFIRMED.